CHARLES W. BRIGGS and JOHN T. BRIGGS *v.* CHARLES SIZER.

Neither the retention of an order for the delivery of property by the drawee, nor the subsequent recognition of it in a letter, or in conversation, nor all of them combined, will prove an acceptance of the order.

Retention of an order may, unexplained, justify an inference of acceptance.

But, where the drawee of an order for carrot seeds wrote a letter to the payees acknowledging the receipt of the order, and saying that he could not then fill the order, but that he would *try* and send a part or the whole of the seed in the course of two or three weeks; *Held,* that the inference arising from the retention of the order was rebutted by the letter.

*Held, also,* that the letter was not an acceptance of the order, there being no promise to deliver, at any time, any quantity of seed.

That the letter was to be treated rather as an offer of new conditions, upon which the drawee expressed his willingness to try to deliver all or part of the seed; and that, if it were thus considered, then it was incumbent on the payees to notify the drawee of their acceptance of the proposed terms.

A recognition, by the drawee, of the *goodness* of an order, is not an acceptance; especially where he declares, at the same time, his inability to deliver the property unless the payee will wait until he can import it.

Orders for the delivery of personal property do not require any acceptance. They are usually ratified by a delivery of the property on presentation; and hence it is that possession of such an order, unexplained, is evidence that the drawee has paid it.

The holder of such an order may, however, require an acceptance of the same in writing; and, when he does require it, the drawee is bound so to accept.

Where the payees did not ask or expect a written acceptance of the order, but sent it forward in the expectation that the property would be at once forwarded or notice given that it would not be delivered, and the drawee declined to accept, and immediately notified the payees of his determination not to accept unless they would accept the conditions which he proposed, which they failed to do; *Held,* that, after this, the retention of the order by the drawee could have no effect on the relation of the parties.

It is not necessary there should be a consideration moving from the payee to the drawee of an order in order to support an acceptance. In this case, as in all cases of bills of exchange, the consideration for the acceptance moves between the drawer and drawee, and not between holder and acceptor.

If there is a valid contract between the drawer and drawee, by which each agrees to sell and deliver property to the other, the promise of the one party is a sufficient consideration for the promise of the other, and the drawer can maintain an action for the breach of the contract.

The plaintiffs are partners in the business of raising garden seeds at Rochester, in this state, and the defendant is engaged in the same business at New Lebanon, in Columbia county. J. Rapelje & Co. were partners, carrying on e same business at Rochester. In September, 1855, the defendant was at Rochester, and, while there, entered into an arrangement with Rapelje & Co. to exchange with them garden seeds raised by him for garden seeds raised by them, and each delivered to the other a schedule containing the kinds and quantities which each desired to receive. It would seem that prices were agreed upon for the various kinds of seed, but whether such prices were entered in the schedules does not distinctly appear. It would also seem that the defendant was accustomed to visit those who purchased seeds of him, before the time for delivery thereof, in order to ascertain the kinds and quantities desired, and that the arrangement with Rapelje & Co. was made while on such an excursion. At the time of making this arrangement some of the seeds were not threshed so as to be ready for delivery; when they were ready does not appear. Amongst other seeds desired by Rapelje & Co. of the defendant was 1,000 pounds of carrot seed, which was worth in October, 1855, fifty-six cents per pound.

Soon after the aforesaid arrangement was made, R. & Co. sold to the plaintiffs 500 lbs. of the carrot seed, to be delivered by the defendant, and gave to them an order on the defendant in the words following, viz:

"Charles Sizer—deliver to Briggs & Bro. 500 pounds carrot seed and charge       J. Rapelje & Co.

"1st Oct., 1855."

This order was immediately enclosed to the defendant by mail, who received the same and has ever since retained it. On the 4th October, 1855, the defendant caused to be written to the plaintiff a letter, of which the following is a copy, viz:

"New Lebanon, Oct. 4, 1855.

"Esteemed Friends,—Yours of the 1st inst. containing

Rapelje & Co.'s order for carrot seeds was duly received. I cannot get any carrot seeds of our folks as I generally have, and therefore cannot supply at present. My crop is pretty fair, but is not dry enough to thresh. I will try to send a part or the whole of it in two or three weeks.

"Yours respectfully, CHARLES SIZER,

"*Per* J. A. Young."

Immediately on the receipt of this letter the plaintiffs paid R. & Co. for the five hundred pounds of seed by giving them notes therefor, and such notes were subsequently paid. R. & Co. failed in business in December, 1856, and assigned their property for the benefit of their creditors. They were solvent when the arrangement was made, in September, 1855. On the 19th of November, 1855, the plaintiffs wrote to the defendant urging him to send forward the carrot seed, as they would be short. In January, 1856, there was a personal interview between the defendant and the plaintiffs, wherein the defendant recognized the order, by stating that it was good, and offering to furnish the seed if the plaintiffs would wait till he could import it from France, which the plaintiffs declined to do on account of the lateness of the season. The defendant has never furnished any carrot seed on the order. Its value was $332.

The complaint contained two causes of action, in the first of which the arrangement between R. & Co. and the defendant was set forth, and the drawing and acceptance of the draft were alleged, and the non-delivery. The second cause of action contained the same matters, and also a claim for special damage, by reason of the non-delivery of the seed. The answer was a general denial of the complaint.

The cause was tried before DAVIS, J., without a jury, who found the facts above stated, and ordered judgment for the plaintiffs for $332, besides costs.

The court further found, as matter of fact, that at the time the order was drawn on the defendant by R. & Co.

they were indebted to the defendant for balance of account in the sum of $60, but when the arrangement was made in September, the defendant was indebted to R. & Co. in the sum of about $400.

The general term of the seventh district reversed the judgment, and ordered a new trial, upon the grounds: 1st. That there never had been an acceptance of the order, and 2d. That there was no consideration for the defendant's promise.

The plaintiffs appealed to this court, stipulating that final judgment might be entered against them if the judgment of the general term should be affirmed.

*Daniel Wood*, for the appellant.

*J. Van Voorhis*, for the respondent.

MULLIN, J. If there was an agreement entered into by the defendant to deliver 500 pounds or any other quantity of carrot seed, that agreement was with Rapelje & Co., and not with the plaintiffs, unless the defendant accepted the order drawn by R. & Co., in favor of the plaintiffs. It was the acceptance, and the acceptance alone, that gave the plaintiffs a right of action. The original agreement has never been transferred to the plaintiffs. The right of action for its breach passed to the assignee of R. & Co., by the assignment for the benefit of their creditors, or remains in them.

The important and indeed the only question in the case is did the defendant accept the order? The court below did not in terms find an acceptance, but it found facts from which it is said acceptance may be inferred. These were the retention of the order; the subsequent recognition of it, in the defendant's letter of the 4th of October, 1855, and in the conversation in January, 1856. But none of these, nor all of them combined, prove an acceptance.

Retention of an order may, unexplained, justify an infer-

ence of acceptance, but in this case any such inference is rebutted by the letter of the 4th of October. In that letter the defendant distinctly informs the plaintiffs that he could not then fill the order but he would *try* and send some or all of it in the course of two or three weeks. If this letter is relied upon the plaintiffs must take the acceptance as given, and that acceptance was to try to deliver in two or three weeks a part or the whole of the carrot seed. This is no acceptance of the order. There is no promise to deliver at any time any quantity of seed.

This letter is to be treated rather as an offer of new conditions, upon which the defendant expresses his willingness to try to deliver all or part of the seed. But, if it is thus considered, then it was incumbent on the plaintiffs to notify the defendant of their acceptance of the proposed terms. This they never did, but insisted on the letter as an acceptance of the order, and claimed damages by reason of the non-delivery of the seed.

There was nothing in the interview of January, 1856, evincing an intention to accept the order unless upon conditions which the plaintiffs refused to assent to. The learned judge finds he recognized the order by stating that it was good. But a recognition of the goodness of the order is not an acceptance; particularly in view of the fact that he declared, at the same time, his inability to deliver the property unless the plaintiffs would wait till he could import it. They declining to wait relieved the defendant from any liability upon his offer.

Had this been a bill for the payment of money, and transmitted to the defendant for acceptance, the retention of the bill would not have justified the inference of an acceptance, either in this country or in England, before the passage of the statutes requiring acceptances of bills to be in writing. Chitty, in his work on Bills, (8th American [Springfield] Edition, 324,) says: "An acceptance may also, as to foreign bills, (except those drawn on France, when a written signed acceptance is required,) be implied

as well as express; and it is said that it may be inferred from the drawer's keeping the bill a great length of time, or by any other act which gives credit to the bill and induces the holder not to protest it, or is intended as a surprise upon him and to induce him to consider the bill as accepted. But it should seem that the mere detention of a bill for an unreasonable time by the drawer will not amount to an acceptance."

In Story on Bills, section 246, it is said, keeping a bill which is sent to the drawee for acceptance, a considerable length of time *without returning any answer*, may, under circumstances, be treated as an acceptance; especially if, when sent, the drawee is informed that his so keeping it *without returning any answer* will be deemed an acceptance. But as such conduct is equivocal, unless circumstances of a stringent character, such as those above stated, occur, the mere keeping of the bill will not be held to amount to an acceptance. (See also Edwards on Bills, 417, 418).

The rules governing bills of exchange are at least as liberal as those which govern orders for the delivery of personal property, and if the acts proved in this case would not constitute an acceptance of a bill, they would not constitute the acceptance of an order.

Orders for the delivery of personal property do not require any acceptance. They are usually satisfied by a delivery of the property on presentation; and hence it is that possession of such an order, unexplained, is evidence that the drawee has paid it. (1 Cowen & Hill's Notes, 315; *Alvord* v. *Baker*, 9 Wend. 323.) But there is no such presumption of payment of orders for the payment of money. The presumption in such cases is that the order is drawn on moneys owing by the drawee to the drawer. (See authorities last cited.)

The holder of an order for the delivery of personal property may require an acceptance in writing of the order; and when he does require it, the drawee is bound so to accept. The same considerations that render proper the

acceptance of a bill or draft in writing, apply with equal force to orders. The holder, until acceptance, has no claim upon or remedy against the drawee, and hence the relations between the holder and drawee are left depending on the acceptance or non-acceptance of the order. Again, the holder is entitled to have the evidence of the acceptance in writing, so far as to relieve him from the difficulties of proof attending a mere verbal or implied acceptance.

If the property is *in esse*, which is required to be delivered, and is ready for delivery, the order is usually accepted by an immediate delivery of the property, or compliance with the order is at once refused.

In this case the plaintiffs did not ask or expect a written acceptance of the order. They sent it forward in the expectation that the property would be at once forwarded, or notice given that it would not be delivered. The defendant declined to accept, and at once notified the plaintiffs of his determination, unless they would accept the conditions which he proposed. This they did not do. After this, retention of the order could have no effect on the relation of the parties.

I cannot agree with the learned judge who delivered the opinion of the court below, that there was no consideration for the acceptance of the order, if it was in fact accepted. If there was a valid contract between Rapelje & Co., and the defendant by which each agreed to sell and deliver to the other, garden seeds, the promise of the one party was a sufficient consideration for the promise of the other. And Rapelje & Co., could have maintained an action for the breach of the contract. It was not necessary that there should be a consideration moving from the plaintiffs to the defendant in order to support an acceptance of the order. In this case, as in all cases of bills of exchange, the consideration for the acceptance moves between the drawer and drawee, and not between holder and acceptor.

Had the court below put their decision upon the ground

that there was not sufficient evidence of an agreement between R. & Co. and the defendant for the sale by the latter to the former of any quantity of garden seeds, I should have concurred with them. When persons engaged in the business of seed-raising visit dealers in the different parts of the state to ascertain whether any and what quantity of seeds will be required for the ensuing season, it is not expected or intended, I apprehend, by either party that when the country dealer indicates the quantity he will want, a binding contract is thereby made, on the one side to deliver, and on the other to receive the seeds so ordered. It is to be taken rather as an offer by each to the other, and which each may recall at any time before it is accepted. When the contract relied on in this case was made, the defendant had not threshed his carrot seed, and could not, therefore, know whether he would have 1,000 pounds of seed to deliver to any person, and it would be absurd to suppose that R. & Co., dealers in the article, supposed that the defendant obligated himself to deliver to them the quantity indicated, or pay them damages for the omission to deliver.

But there being no acceptance of the draft, this action must fail, whatever might be our views as to the validity of the contract between R. & Co. and the defendant; and, therefore, the order for a new trial must be affirmed, and judgment absolute rendered for the defendant, with costs.

All the judges concurring, judgment affirmed.