12   328
d50   347

JOSEPH SILBERMAN, Respondent, v. SAMUEL S. FRETZ, Appellant.

*Sale — acceptance by a vendee of a part of goods purchased — when liable to pay therefor before complete performance of the contract — waiver — set-off.*

When a vendor makes a shipment of goods less in amount, and at a later date than the contract for the sale of such goods requires, and the correspondence between the parties justifies a construction that the vendee is to pay for the goods so shipped on delivery, and the vendee accepts the partial delivery, he thereby waives his right to insist upon a complete performance of the contract before he becomes liable to pay for the goods actually delivered.

If in such a case the vendee has sustained any damage in consequence of the vendor's breach of the contract, the vendee may sue for the damages thus sustained or offset them against the vendor's claim for the price of the goods delivered.

APPEAL by the defendant, Samuel S. Fretz, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 27th day of March, 1896, upon the decision of the court rendered after a trial before the court without a jury at a Trial Term of the Supreme Court held in and for the county of New York.

*Charles E. Hughes,* for the appellant.

*Julius J. Frank,* for the respondent.

INGRAHAM, J.:

The action was brought to recover the contract price for twenty pieces of "Helvetia," forty-eight inches in width. The plaintiff's assignors, who will be here called the plaintiffs, were a firm doing business in New York under the name of Luckemeyer, Schefer & Co. This firm made two contracts with the defendant, one dated August 12, 1886, the other August 18, 1886, by which contracts they sold to the defendant one hundred and twenty pieces of "Helvetia," sixty pieces being forty-four inches and sixty pieces being forty-eight inches, at an agreed price. The first sixty pieces under the contract of August twelfth were to be delivered September twenty-eighth or earlier, and the remaining sixty pieces sold under the contract of August eighteenth were to be delivered in November, 1886. It seems that prior to and at the time of making these contracts in question, other contracts were made between the plaintiff's assignors and the defendant for the sale of other goods, no goods, however, having been delivered to the defendant on account of such contracts. This contract of August 12, 1886, which provided for the delivery of sixty pieces of "Helvetia" had not, on the 22d of October, 1886, been complied with; and the time of the delivery of the goods sold had expired. The contract of August eighteenth, which also provided for the delivery of sixty pieces to the defendant, had not been complied with, but the time of its completion had not expired, as those sixty pieces were to be delivered during the month of November. Prior to October, 1886, there seems to have been a new understanding between the defendant and a Mr. Sternberger, as representing the plaintiffs, which was reduced to writing

and signed by the defendant and delivered to the plaintiffs, by which it was understood that the defendant was to receive from the plaintiffs forty pieces of "Helvetia" on the first of November, and twenty pieces in addition during the month of November. There were further to be delivered in November sixty pieces, and on or about December tenth sixty pieces in addition. The contract further provided as follows: "As soon as I receive the above-mentioned 40 pieces of Helvetia [evidently the forty pieces to be delivered on the first of November] I bind myself, without any further delay, to pay with them for the 40 pieces of Gloria I received October 18th, amounting to $1,278.93, after deducting 7% discount." None of these goods appear to have been delivered on the first of November according to this understanding, but on the eighteenth of November the plaintiffs delivered to the defendant twenty pieces of forty-eight inch "Helvetia" which were received by the defendant and have not been paid for. It is to recover for the contract price of these twenty pieces that this action is brought. None of the other goods provided for in either of these contracts of August twelfth or eighteenth, or in the revised agreement of October 22, 1886, has been delivered to the defendant. No counterclaim is set up in the answer, and no attempt is made to offset the damages sustained by the defendant in consequence of the failure of the plaintiffs to deliver the goods sold. The court below allowed a recovery for the goods which were delivered to and received by the defendant, and the sole question presented here is whether or not the plaintiffs are entitled to recover without alleging and proving that they had completed the delivery of all the goods which they sold and agreed to deliver upon the first of November. The action was tried by the court below without a jury, and a recovery was allowed upon the grounds as stated by the court as follows: "True, the defendant was not bound to accept a delivery of twenty pieces only, if not in accordance with the understanding of the parties. He had a right to reject or retain them, as he saw fit. Yet, if he elected to accept the part delivered.— appropriated the same to his own use, and by his acts evinced a waiver of the condition as to entire delivery, he then became liable to pay for what was actually delivered." We think that this is a correct statement of the law applicable to this case. The

authorities cited by the learned judge in his opinion amply sustain it. The court then said : " The correspondence between the parties shows that the defendant did not expect to avoid payment for the goods delivered, except by recouping his damages for non-delivery of the remainder. He put himself squarely upon this position, which is entirely 'inconsistent with the claim now made that he is not liable at all.' If the attitude he assumed was warranted by his understanding of the facts, the defendant should have recouped his damages for non-delivery of the other pieces, for this, according to the rulings in *Tipton* v. *Feitner* (20 N. Y. 423) and *Avery* v. *Willson* (81 id. 341), was the only course then available to him." The question presented in this case is whether the facts as proved sustain this conclusion of the court.

As before stated, the revised contract was made on October 22, 1886. Whether or not the obligations of the plaintiffs under the contracts of August twelfth and eighteenth were abrogated by this new contract, it is clear that, as between the plaintiffs and the defendant, the time for the delivery of the goods in question was extended, so that the delivery of these goods at the time mentioned in the memorandum on October twenty-second would have been a good delivery under the original contracts of sale.

By the contract of October twenty-second the defendant expressly agreed that as soon as he received the forty pieces of "Helvetia," which were to be delivered on November first, he would, without any further delay, pay with them for the forty pieces of "Gloria" which he had received on October sixteenth. By this it is clear that it was understood that as soon as the forty pieces of "Helvetia" were delivered to him he was to pay for those forty pieces, and also pay for the "Gloria" which he had received on October eighteenth, and which he had not then paid for. Under that contract as it stood it is clear that he would not be bound to pay for any of the "Helvetia" until the whole forty pieces had been delivered. In other words, it was an entire contract and the defendant became liable only upon the plaintiffs' completing it and delivering the whole forty pieces, unless in some way the defendant waived his right to insist upon an entire completion of the contract. (See *Nightingale* v. *Eiseman,* 121 N. Y. 292.) The correspondence between the parties after the 22d of October, 1886, justifies, we

think, the conclusion of the court below that the defendant waived his right to insist upon a completion of the entire contract before becoming responsible for the goods delivered to him. Under the contract of October twenty-second these forty pieces were to be delivered on the first of November. The plaintiffs failed to make such delivery within that time, but on November eighth they wrote a letter to the defendant by which they said that twenty pieces of Austria, a material of the same character, but manufactured by a different manufacturer, had been shipped from Europe, and that they had on hand twenty pieces of Gloria; and the defendant was asked to notify the plaintiffs whether he desired these goods. In reply to that letter, on the ninth of November, the defendant wrote the plaintiffs that he did not want the Gloria, and did not want the Austria, as he had not purchased either of them, but that he did want the "Helvetia," saying, "But I do want *Helvetia* at once or you pay dear for such nonsense." This letter was answered on November 10, 1886, whereby the plaintiffs said: "If we do not deliver you on time the Helvetia ordered, you cannot fill your contracts; we are in the same position as you are; we have placed your order with Otto Miller & Co., and hold his copy of order, but owing to having taken too many orders he cannot deliver in time, and as we cannot make the goods you will have to wait or cancel your orders. * * * We have now in *port the 20 ps. 48 i. Helvetia a. 67 c.* and will have them ready for delivery in a few days, but shall *not ship them unless you assure us that you will pay for them on receipt.*" In answer to this letter the defendant wrote to the plaintiffs, on November eleventh, in which he again insisted upon the plaintiffs complying with the contract to deliver "Helvetia," complaining of the interruption of his business because of this non-delivery, and insisting upon the liability of the plaintiffs for their failure to comply with their contract, and saying, "We had better fix up our *account fairly*, but I must have some consideration for my loss. If the goods in port are Austria, I do not want them; if Helvetia, I do want them at once." In answer to this letter the plaintiffs wrote to the defendant, on November twelfth, sending samples of the twenty pieces of Austria, and closing with the statement, "We shall ship no goods until receipt of check for overdue bill & dispose of the goods held for you unless you pay for them

as agreed when order was taken." And in reply to that letter the defendant wrote, on the thirteenth of November, again complaining of the plaintiffs' refusal to send the " Helvetia ; " and after speaking of the twenty pieces of Austria, a sample of which had been sent him, he says : " I had all the patience with you imaginable, hoping that you meant to make good your contract, but I begin to think that you mean to show me that contracts mean nothing — not even when partly delivered. You say you will not deliver goods except the first bill is paid. My credit is good anywhere for ten times the amount I owe you, so that will not excuse you from complying with terms of contract. I am simply holding back settlement because you owe me considerably if not filled very shortly." This seems to have been the last letter that passed between the parties until after the delivery of the twenty pieces of " Helvetia " on November eighteenth. It will be seen that on November tenth the plaintiffs stated to the defendant that they had these twenty pieces of Helvetia, but would not ship them unless the defendant assured the plaintiffs that he would pay for them on receipt. In answer to that letter the defendant said that if the goods in port were Austria he did not want them ; if Helvetia, he wanted them at once ; and this was coupled with a statement, not that he would refuse to pay for these twenty pieces when delivered until the forty pieces provided for by this entire contract had been delivered, but that he objected to paying for them without an allowance by the plaintiffs for the damages that the defendant had sustained because of their failure to completely fill the contract within the time fixed. Here the plaintiffs stated to the defendant that they had twenty pieces, but that they would not deliver them unless the defendant promised to pay for them upon delivery. The contract had provided that on the delivery of the forty pieces those forty pieces should be then paid for ; and in answer to this request the defendant expressly stated to the plaintiffs that if they had the Helvetia he did want them at once. Here was an express agreement accepting the terms upon which the plaintiffs said they would deliver the twenty pieces, namely, a payment for them at once, without insisting upon the entire completion of the contract ; and, we think, upon the delivery of these twenty pieces under this contract, as modified by the correspondence, that the defendant became liable to the plaintiffs for

the amount that he agreed to pay for the twenty pieces. If the defendant had sustained any damage, in consequence of a breach by the plaintiffs of their contract of sale, he had a cause of action against the plaintiffs for the damages sustained. He was liable, however, to the plaintiffs for the contract price of the goods sold and delivered; and as he failed to set up any counterclaim or offset in his answer, such a cause of action against the plaintiffs cannot be allowed in this action.

The conclusion that we have arrived at is amply sustained by the case of *Avery* v. *Willson* (81 N. Y. 341). In that case, as in this, the question was presented whether they (the defendants) " intended to insist that the remainder should be delivered before they paid or became liable to pay for the portion which had already been received and accepted. * * * After this a correspondence ensued, which shows that the parties understood the contract differently, the plaintiffs claiming that the sale was made subject to such stock as the plaintiffs had at the time of receiving the order, and the defendants that it was from the stock list furnished by the plaintiffs' agent, and each insisting upon their own construction of the terms of the sale. * * * In no part of the correspondence did the defendants claim or take the position that they were not liable to pay for the boxes received, in case the remainder was not delivered. They insisted, until a final disagreement took place, that they were entitled to an amount which was named, and which they stated that they charged to the plaintiffs' account for discount on the list sold from, and the list last furnished, and for damages which they had sustained by reason of the non-delivery of the remainder, and not that they were not bound to pay for what had been delivered. They received part, negotiated for the residue not delivered, claiming damages in consequence thereof, and thus waived strict performance and admitted their liability for the price agreed upon, deducting the charge made for discount or damages. This position is inconsistent with the claim now made, that they were not liable at all."

We think, therefore, that this correspondence, and the receipt by the defendant of these twenty pieces of goods, without insisting or notifying the plaintiffs that he intended to insist upon a delivery of the other twenty pieces, was a waiver of his right to insist upon a complete performance of the contract before he became liable to

pay, and that the judgment below was right, and should be affirmed, with costs.

VAN BRUNT, P. J., WILLIAMS, PATTERSON and O'BRIEN, JJ., concurred.

Judgment affirmed, with costs.