## HOWELLS et al. v. STROOCK et al.

(Supreme Court, Appellate Division, First Department. April 20, 1900.)

1. SALE—OFFER—ACCEPTANCE—COUNTER OFFER.

Where defendants wrote plaintiffs, making an offer for certain cloth, and asked notice of acceptance or rejection by return mail, and plaintiffs replied they would submit the offer to the mill, and advise defendants, there was no contract of sale, since defendants' letter required an unqualified acceptance, and plaintiffs' letter was in the nature of a counter proposition.

2. SAME—ACCEPTANCE OF GOODS—WHAT CONSTITUTES.

Defendants wrote plaintiffs, making an offer for certain cloth. Plaintiffs replied they would submit the offer to the mill, and advise defendants, and subsequently the goods were delivered to defendants, who signed a receipt therefor, but the same day wrote plaintiffs the goods were at their disposal. Held, that there had not been such an acceptance of the goods as to preclude defendants from claiming there had been no contract.

**3. SAME—WAIVER—ESTOPPEL—WHAT CONSTITUTES.**

When defendants wrote plaintiffs that the goods were at their disposal, they referred to plaintiffs' letter, and stated that, as plaintiffs had not advised promptly as to the mill's decision, defendants had purchased elsewhere. *Held*, that defendants' letter referring to plaintiffs' failure to advise promptly was not a waiver of the condition of the first letter, requiring an acceptance or rejection by return mail.

Appeal from trial term, New York county.

Action by Frank S. Howells and others against Louis Stroock and others. From a judgment dismissing the complaint (62 N. Y. Supp. 870), plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Hector W. Thomas, for appellants.

Sol. M. Stroock, for respondents.

PATTERSON, J. This case was tried by the court without a jury. The complaint was dismissed, and from the judgment entered thereupon this appeal is taken. The action was brought to recover for goods sold and delivered. The dealings between the parties concerning the merchandise were by correspondence. On the 3d of October, 1899, the defendants wrote to the plaintiffs a letter, in which, among other things, is contained the following:

"Also send us a piece of the fourteen-ounce green, of which you state you have thirty pieces at eighty-seven and a half cents per yard. We will look it over, and, if the same is satisfactory, might purchase them."

That letter was received by the plaintiffs on the 4th of October, and on the same day they sent to the defendants a sample piece of the green fabric mentioned in the extract above quoted. Still on the same day, the defendants sent by mail to the plaintiffs a letter, from which the following is an extract:

"The piece of green cloth billed October 4th we simply ordered on memorandum. We cannot use these goods. Will buy the lot at eighty cents per yard from you. This is all they are worth to us. Please let us know by return mail if you accept or reject. If the offer is rejected, please send here for this piece."

The plaintiffs received the last-mentioned letter, and on the 5th of October replied as follows:

"We have your letter of the 4th, with offer of eighty cents, for the thirty pieces of green cloth similar to piece sent you on the 4th, and will submit your offer to the mill, and will advise you promptly regarding same."

On the 9th of October 2 cases and 6 pieces, making a total of 23 pieces, of green cloth were brought to the defendants' place of business on a truck of the plaintiffs. Some kind of a receipt was given, but what its terms were does not appear, the record stating that the "defendants signed the usual receipt." On the same day (October 9th) the defendants wrote to the plaintiffs a letter in the following words:

"We are just in receipt of your bill of October 9th for twenty-three pieces of green cloth, which are held subject to your order. We refer you to your letter of October 5th, wherein you state that you have our letter with offer, and that you will submit same to the mill, and advise us promptly regarding it. Now,

as we did not hear from you, and by this letter you were to let us know regarding same, why, we purchased goods elsewhere, and therefore cannot use yours. If Mr. Howells will call here to-morrow morning, the writer will be pleased to see him, but we will positively not keep the goods."

Subsequent correspondence took place between the parties, the plaintiffs claiming that there was a sale and acceptance of the goods, the defendants insisting that their offer had not been accepted, and that they would not retain the goods, and notifying the plaintiffs that such goods were subject to their order, and held at their risk. The trial judge dismissed the complaint on the grounds:

"That the offer made by the defendants required an unqualified acceptance by return mail, and, not having been so accepted, the defendants were at liberty to consider their offer rejected, and to proceed in the manner as if it had never been made; that the plaintiffs' proposition to submit the matter to the mill was in no sense an acceptance of the defendants' offer, but rather in the nature of a counter proposition or offer, to which the defendants did not, by any affirmative act of theirs, assent; that there was no valid contract of sale, and no such acceptance of the property by the defendants as concludes them from making their defense."

We concur in the view of the correspondence taken by the trial judge. The first letter of the defendants, relating to the 30 pieces of goods, is very emphatic in its requirements. Acceptance or rejection of the offer to buy at 80 cents a yard was required by return mail. There was no acceptance, but only a declaration that the offer would be submitted to some one else than the plaintiffs. As the trial judge held, the defendants were entitled to consider their offer as rejected (Taylor v. Rennie, 35 Barb. 272; Maclay v. Harvey, 90 Ill. 525); and, as he also held, the suggestion of the plaintiffs to submit the defendants' offer to the mill was not an acceptance of that offer, "but rather in the nature of a counter proposition or offer." Briggs v. Sizer, 30 N. Y. 651. If the case contained no other feature than that thus far considered, there could be no question of the correctness of the decision of the court below. It is insisted, however, by the plaintiffs that the defendants have waived their strict legal rights arising out of the exact requirement of their letter of October 4th; that the defendants are to be regarded as having acquiesced in the plaintiffs' submission of their proposition to buy to "the mill"; and the contention is made that the letter of October 9th shows that acquiescence, and is evidence of a waiver of the strict requirement of the letter of October 4th. A waiver is not to be inferred in this case from an acceptance of the goods, or any part of them. There was no acceptance. On the very day on which they were sent by the plaintiffs to the defendants the former were notified that the latter would not accept them, and therefore such cases as Silberman v. Fretz, 12 App. Div. 328, 42 N. Y. Supp. 559, Avery v. Willson, 81 N. Y. 341, and Dent v. Steamship Co., 49 N. Y. 390, do not apply. The question is whether what is found in the letter of October 9th has the effect of placing the defendants in any other attitude to the plaintiffs than that in which they stood when their offer of October 4th was made. It is argued by the plaintiffs that the reference contained in the defendants' letter of October 9th to their letter of October 5th is evidence that there was an acquiescence

in the submission of the original offer to the mill, and that the real objection taken by the defendants to the receipt of the goods was that they were not advised promptly regarding it, and hence it is claimed that there was a waiver of the requirement in the original order that it be accepted or rejected by return mail; and it is fur-- ther claimed that, the defendants having specifically put their re- fusal to take the goods on a ground contained in the letter of the 9th of October, they cannot rely upon any other ground. The waiver sought to be established in this case would operate by way of estop- pel, but we cannot find any act or declaration of the defendants which has put the plaintiffs in a position which required them to do; or upon the faith of which they did, any act to their detriment, or altered their position. Nothing whatever was said or done by the defendants between the date of their receipt of the plaintiffs' letter of October 5th and the rejection of the goods sent by the plaintiffs on October 9th. The defendants were not bound to reply to or take any notice of the letter of October 5th, which was properly desig- nated by the court below as being in the nature of a counter offer. The plaintiffs, in sending the goods to the defendants without hear- ing further from them, did not do so in pursuance of any contract relations, express or implied. The reference in the letter of Octo- ber 9th to the defendants' letter of October 5th cannot fairly be con- strued as affecting the relations of the parties to each other in any way. There are many expressions to be found in the reported cases concerning the statement of specific objections being exclusive, and as constituting a waiver of other objections not taken; or, as said in Littlejohn v. Shaw, 159 N. Y. 191, 53 N. E. 810, if a particular objection is taken to the performance, and the party is silent as to all others, they are deemed to be waived. But such expressions must be taken into consideration in connection with the particular facts of the cases in which they are used. There is an underlying reason applicable to all cases affecting the performance of contracts, and in respect of which a waiver of conditions, obligations, or rights arises. As was said by Allen, J., in Johnson v. Oppenheim, 55 N. Y. 291, referring to an objection taken to the performance of a con- tract: "The rule rests upon the ground that the party, by his si- lence, has misled his adversary, and, not having spoken when he ought, shall not be permitted to speak when he would." Here there is nothing of the sort, nothing which could have induced the plain- tiffs to do any act, or from which they could reasonably infer that the defendants had become bound to take the 30 pieces of merchandise. The original offer had not been accepted according to its terms, the counter offer of the plaintiffs had not been accepted, and there was no duty owing by the defendants to the plaintiffs respecting that offer. Nothing occurred until the defendants found that the plain- tiffs had sent certain merchandise to the defendants' place of busi- ness, and they immediately repudiated that as a delivery. The de- fendants were placed in no worse, and in fact no different, position, because of the reference contained in the defendants' letter reject- ing the goods to the plaintiffs' letter of October 5th. We are of opin- ion, therefore, that the defendants' position was not changed, and

that in no just sense can it be said there was a waiver of their right, and that they should not be compelled to accept and pay for goods they never contracted to purchase or receive.

The judgment should be affirmed, with costs.　All concur.