KRAUS v. HANSEN.

1. SALES — CONTRACTS — MEETING OF MINDS — OFFER AND ACCEPTANCE.
   Where plaintiff wrote to defendant, in response to a request for an offer for a quantity of potatoes, that defendant might ship one car of medium size, round, white Michigan potatoes, $1.05 "your track," "potatoes to be sacked in 150 pound sacks, providing man accompanies car if weather remains cold and heat same, as we will not run any risk of potatoes being frosted," and if satisfactory plaintiff would take two more; where plaintiff telegraphed further, "Potatoes * * * must be in 150 pound sacks. Wire us if you cannot get sacks, we will express them. Must have one car this week, balance next week;" repeating the instructions as to quality, etc., and where defendant replied, "Cannot ship until I get cars. Also, I haven't got sacks, as you know, over phone. Will try and ship this or next week if I can get cars," plaintiff writing that he had arranged to have the railroad company send cars and was forwarding sacks, there was no contract, because the minds of plaintiff and defendant did not meet as to the risk of freezing, or the sending of a man in the car.

2. FRAUDS, STATUTE OF—TELEPHONE—ORAL ACCEPTANCE.
   Where the parties to an alleged sale of potatoes did not include in their written correspondence sufficient evidence

of the terms of their agreement to satisfy the statute of
frauds, a later communication by telephone could not be
relied upon as a sufficient acceptance of the terms pro-
posed in their letters, so as to satisfy the statute of frauds.

Error to Montcalm; Davis, J. Submitted June 22,
1914. (Docket No. 70.) Decided July 24, 1914.

Assumpsit by Edward N. Kraus against John Han-
sen for breach of a contract for the sale of three car-
loads of potatoes. Judgment for plaintiff. Defend-
ant brings error. Reversed; new trial refused.

*Frank A. Miller* (*N. O. Griswold*, of counsel), for
appellant.

*J. W. Dasef*, for appellee.

OSTRANDER, J. The defendant, who traded as Han-
sen's Department Store, at Edmore, Mich., wrote and
mailed to plaintiff, trading as E. N. Kraus & Co., at
Toledo, Ohio, a postal card:

"EDMORE, MICHIGAN, 3/2/12.
*"Dear Sir:*
"Your name was given to me by Jake Lichtenauer,
of Greenville. I have at present three carloads of
good, first-class white potatoes on my hands and I am
going to sell them as soon as cars can be placed next
week I expect. What can you give here."

Plaintiff wrote defendant in reply:

"TOLEDO, OHIO, March 4th, 1912.
"HANSEN'S DEPARTMENT STORE,
    "Edmore, Mich.
*"Gentlemen:*
"You may ship us one car medium size, round white
Michigan potatoes, $1.05 your track; potatoes to be
sacked in 150-pound sacks, providing man accom-
panies car if weather remains cold and heat same,
as we will not run any risk of potatoes being frosted
and man must accompany car with stove. If this car
proves satisfactory, we would be willing to buy the
other two you have. Wire if you accept."

And later sent a night letter by wire, reading:

"March 6th, 1912, TOLEDO, OHIO.
"HANSEN'S DEPARTMENT STORE,
        "Edmore, Michigan.        ·

"Potatoes you are shipping us must be in 150-pound sacks. Wire us if you cannot get sacks we will express them. Must have one car this week, balance next week. Send only good stock, medium size round white potatoes free from frost. Stove and man in cars.

        "E. N. KRAUS & CO."

A postal card from defendant to plaintiff, reading:

"EDMORE, MICHIGAN, 3/7/12.
"Dear Sirs:

"Your telegram at hand and noted. Cannot ship until I get cars. Also I haven't got sacks as you know over the phone. Will try and ship this or next week · if I can get cars.

        "Yours truly,
            "JOHN HANSEN,
        "HANSEN'S DEPARTMENT STORE."

—and the reply:

"TOLEDO, OHIO, 3/12/12.
"HANSEN'S DEPARTMENT STORE,
        "Edmore, Mich.
"Gentlemen:

"We have arranged with the P. M. to send you cars to load our potatoes in; you should have one at hand tomorrow morning. Are sending you 200 sacks and together with the 50 you have on hand will be enough to sack one car. As soon as loaded rush down to us and wire us and we will send enough sacks to sack the other cars.

        "Very truly yours,
            "E. N. KRAUS & CO."

—completed the written correspondence. Defendant sent no potatoes, and plaintiff supplied himself as he could. Potatoes of the quality described were scarce and advanced in price, and plaintiff paid from $1.20 to $1.22 per bushel for them in car load lots. A car load of potatoes, sacked, contains 625 bushels or more.

Plaintiff forwarded to defendant sacks for one car load, and was prepared to forward sacks for further shipments. It does not appear that defendant was furnished a car or cars in which to ship the potatoes.

Plaintiff sued for damages for breach of a contract to deliver to him at Edmore, free on board cars, three car loads of potatoes at $1.05 per bushel. Upon the trial, he was permitted, over objection, to introduce testimony which tended to prove the following facts: Upon receiving the card first written by defendant, plaintiff called defendant by telephone, and in the conversation arranged and bargained with defendant for one car of potatoes at $1.05 per bushel, to be shipped immediately; if the quality of potatoes delivered was as represented, then for two other cars, all to be in 150-pound sacks; that his letter of March 4, 1912, was confirmatory of the oral bargain. After sending the letter, defendant called plaintiff on the telephone, and insisted that he take three cars of potatoes, to which plaintiff consented and agreed to take three car loads and confirmed the arrangement by his night message of March 6th. Defendant agreed that plaintiff should buy sacks, the cost of them to be deducted from the account for potatoes. Later, in a conversation by telephone, defendant said he could get no cars. Plaintiff then asked the railroad company to furnish cars, or a car. Receiving no potatoes, plaintiff again, about March 15th, talked with defendant by telephone, who told him that the market had advanced, his attorney had advised him he need not ship the potatoes, and that plaintiff would not get them. Recalled, after defendant had rested his case, plaintiff testified:

"There was no talk between myself and Hansen at any time in reference to shipping the potatoes in refrigerator cars. That is the reason I wanted a stove put in. I told him I would pay for that part of it if he would have a stove in. I knew it was impossible

to get a refrigerator car, but you could get plenty of box cars. I would have been willing to receive the potatoes in box cars.   *   *   * ''

Cross-examination:

"Q. When you wrote those letters of March 4th and March 12th, etc., you meant everything you said in them, didn't you?

"A. I suppose so.

"Q. You didn't say anything for his amusement or your own, but what you meant, did you?

"A. No.

"Q. What did you mean by this, 'Will not run any risk of potatoes being frosted?'

"A. I have said previous to that, in a car with a stove; and I was to pay for it. That is why I wanted him to be sure and do that.

"Q. Then when you bought the potatoes you meant that you were not buying them at Edmore on board cars, but they must be delivered to you in Toledo free from frost, didn't you?

"A. I didn't say so.

"Q. If you bought them at Edmore, you would have to put your own man in the car?

"A. Well, he was to get a man at my expense, so he was virtually my man.

"Q. Where did you say anything about 'at your expense' in these letters?

"A. It was on the telephone."

Defendant offered testimony tending to contradict in many material matters that produced by plaintiff. He denies that in the telephone conversation he agreed to put a man and a stove in a car under any circumstances, but did say he would put in an order for a refrigerator car, and did so, but no refrigerator car was ever furnished him, and he got none until May. He sold the potatoes for $1.08 to a buyer, who secured refrigerator cars for shipment. His version of the last telephone conversation is:

"At the second conversation, in Grand Rapids, I was in Mr. Hilding's office when the call came in for me, and he said he was Kraus & Co., and wanted to

know when I was going to ship them potatoes. I said, 'I haven't got any cars yet.' He said, 'We must have them potatoes.' I says, 'I haven't got any cars; how can I ship them, ship them in open box cars?' He says, 'Ship them in open box cars.' I says, 'It is snowing, and I don't dare ship these potatoes in open box cars; I don't dare ship them in open box cars unless you wire me money in advance; I will not ship them unless you wire me money in advance.' I did not say to him at that time that potatoes had come up, and I was not going to ship them. I says, 'I am down here on a lawsuit, a man owes me a small account, and I am trying to collect it; when I get home, if he has cars there—although those two weeks' contract has expired—if there is a car there I will still load a car for you.' That is what I told him. I was not able to get a car when I got home."

And again:

"He said, 'Are you shipping those potatoes?' And I says, 'I cannot get cars.' He says, 'Put them in box cars.' I says, 'Snowing here; if you will guarantee the purchase, send the money in advance, when I get home—this is the last day on the contract, last day on the two cars they said they must have—and if the cars are there when I get home, if the car is there I think I said, when I get home I will fill it for you at that.'"

The court instructed the jury that the whole controversy hinged "absolutely and entirely" on the conversation over the telephone with Hansen at Grand Rapids; that under the undisputed testimony there was a contract made for the sale of three car loads of potatoes. Calling attention to the original postal card sent by defendant to plaintiff and the written reply thereto, the court said:

"Up to that point there was an absolute bargain made for one car at $1.05 f. o. b. Edmore. No terms had been arranged for as to payment, so of course it would be due at the time of shipment if the other party so demanded."

It is obvious that the two writings referred to do

not make a contract for one car load of potatoes. There was no written acceptance by plaintiff of the written offer of defendant. On the contrary, a counter proposition was made. Besides which, the court had admitted testimony which, if believed, established that the first written communication of plaintiff was confirmatory of a bargain not proposed by defendant in his first written communication, but arranged by telephone. There is lacking, also, written acceptance by defendant of plaintiff's counter offer. The court proceeded:

"Later further correspondence passed between the parties in which the court finds that a contract was made for the other two cars also, so that it was then contemplated three cars would be shipped by Hansen to this man as soon as Hansen could get cars to ship them, and if he could get cars to ship them. It was a contract to deliver those three cars of potatoes on the part of Hansen, providing he could get cars to ship them, without naming the time except as he agreed in his correspondence to send them if he could. Under Hansen's offer he was to have done it within a reasonable time. * * * Up to this point now, up to the time of the last night telegram, up to the time before they had the telephone communication at Grand Rapids, the duty of Hansen was to send those potatoes."

I assume that the term "correspondence," used by the court, meant both the written and oral communications. Proceeding, the jury was further instructed, in substance and effect, that, if the last telephone conversation occurred as plaintiff testified, and was as he testified, plaintiff should recover, but if they believed defendant with reference to that conversation, plaintiff could not recover, the reason given being that if defendant upon that occasion refused unqualifiedly to deliver the potatoes, he waived performance by plaintiff of the duty to furnish cars. I find nothing in the written memoranda indicating that either party accepted, unconditionally, any proposal made by the

other. For example, where does it appear that plaintiff accepted the risk of the potatoes being frozen in transit? Or that defendant undertook to send a man and stove in the cars? Or that plaintiff was to pay the expense of a man to travel with the cars and keep a fire? How can the terms of the contract which plaintiff says was made be discovered without the aid of parol testimony? The testimony which was received does not merely explain the writings, but is relied upon to prove, what the writings do not prove, that at some time an oral proposition was accepted as made. When the testimony is considered, the wisdom of the statute of frauds is exemplified. If there was no existing contract when the last conversation by telephone occurred, no breach of contract grew out of that conversation. If a bargain was made during that conversation, it was one resting in parol.

It was therefore error to instruct the jury that a contract for three car loads of potatoes had been established. The judgment is reversed; and, as the court should have directed a verdict for defendant, no new trial is awarded.

McALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.