GUYAN COAL & COKE CO. *v.* WHOLESALE COAL CO.

1. CONTRACTS—OFFER MUST BE ACCEPTED SUBSTANTIALLY AS MADE TO CONSTITUTE CONTRACT.

   In order to make a contract by correspondence, substantially the identical proposal of one party must be accepted by the other; the letter of acceptance must in every respect correspond substantially with the offer, neither falling short nor going beyond the terms of the proposal.[1]

2. SALES—CONTRACTS.

   Correspondence between plaintiff and defendant in which offers to sell coal were met by counter proposals, but showing no meeting of minds, was properly held by the trial court not to constitute a contract.[2]

3. SAME—INFERENCES REBUTTED.

   Where plaintiff shipped to defendant several car loads of coal after receiving an order for 25 cars, any inference that it accepted the order as given is rebutted by its letter acknowledging the order and promising "25 or as near 25 as we are able to ship."[3]

4. SAME—QUESTION FOR JURY.

   Whether an oral contract for coal was for 25 car loads, as claimed by defendant, or for an indefinite number not to exceed 25, as claimed by plaintiff, *held*, properly submitted to the jury.[4]

5. APPEAL AND ERROR — DEPOSITIONS — ACADEMIC QUESTIONS NOT CONSIDERED.

   Where, during the trial, plaintiff's objection to certain questions in depositions taken by defendant was sustained over defendant's objection that plaintiff's objection thereto should have been made while the testimony was being taken rather than on the trial, and it appears that the answers to the questions rejected in no way affect the only question submitted to the jury, the Supreme Court will treat the question presented as purely academic.[5]

[1]Contracts, 13 C. J. §§ 86, 114; [2]Sales, 35 Cyc. p. 54; [3]Id., 35 Cyc. p. 55; [4]Id., 35 Cyc. p. 124; [5]Appeal and Error, 4 C. J. § 2541.
229—Mich.—17.

6. SAME—ARGUMENT OF COUNSEL STRICKEN OUT NOT REVERSIBLE ERROR.

Statements by plaintiff's counsel, in his argument to the jury, which might well have been omitted, but which were of no serious consequence, *held*, not reversible error, where stricken out by the trial judge on objection of defendant's counsel.[6]

Error to Wayne; Shepherd (Frank), J., presiding. Submitted October 22, 1924. (Docket No. 122.) Decided December 10, 1924.

Assumpsit by the Guyan Coal & Coke Company against the Wholesale Coal Company for goods sold and delivered. Judgment for plaintiff. Defendant brings error. Affirmed.

*James G. McHenry* (*Thomas W. Barnes, Jr.*, of counsel), for appellant.

*Cornelius, Doland & Boggio*, for appellee.

FELLOWS, J. A representative of the plaintiff and one of the defendant had a conversation about plaintiff selling and defendant buying from it some coal. Each party insists that an oral agreement was reached. They are in conflict upon but one material point as to what it was, plaintiff insisting that no definite number of cars was agreed upon but not to exceed 25 were to be shipped, defendant insisting that the number of cars was definitely agreed upon at 25. They agree that the price was fixed at $2.35 a ton. This was followed by correspondence. Many exhibits were introduced covering some 45 pages of the record. Obviously they need not all be quoted and we shall state such portions of the writings as may be necessary to an understanding of the case. Following the conversation defendant sent an order for "25 cars Coalburg Seam." There were many conditions in it,

---

[6]Appeal and Error, 4 C. J. § 2938.

one as to analysis, another as to sending car numbers daily, another that invoices be rendered before the 5th and payments made on the 25th of the month, and many other details not necessary to mention. Upon receipt of this paper plaintiff sent a so-called "acknowledgment," for "25 or as near 25 as we are able to ship" of "W. Va. ROM." with numerous conditions attached covering over two pages of the record. Defendant replied by letter saying it would waive the question of analysis but it would accept "nothing but A No. 1 coal, quality and preparation guaranteed," and calling attention to the number of cars insisted that it was entitled to the full 25 cars. Plaintiff replied to this saying it would make all possible efforts, calling attention to general conditions and concluding:

"You can be assured if it is possible to ship the entire 25 cars we will do so, but under the circumstances this is the very best we can promise you."

Immediately following the talk and while the correspondence was going on plaintiff commenced shipments, shipping 7 cars in all. Upon each of the invoices appeared the following:

"Net cash 10th of month following shipment. No exception."

Plaintiff brought this suit to recover for the coal delivered, and defendant, while admitting the amount of coal received and the amount due, claimed the right to recoup as damages the difference between the contract price and the market price of 18 cars of coal it had purchased in the open market. The trial judge held that the writings did not make a contract, but in recognition of the rule that part delivery took the contract out of the statute of frauds submitted to the jury the conflicting claims of the parties as to what the oral agreement was, charging that if the oral agreement was as claimed by plaintiff it was entitled

to recover the full amount; if as claimed by defendant it was entitled to recoup its damages. The jury found for plaintiff.

The trial judge was right in holding that the writings did not make a contract, did not show a meeting of the minds. In not one of the writings did either party unconditionally accept the proposal of the other party. Each of the writings contained a counter proposal. In order to make a contract by correspondence, substantially the identical proposal of one party must be accepted by the other; the letter of acceptance must in every respect correspond substantially with the offer, neither falling short nor going beyond the terms of the proposal. In *Eggleston* v. *Wagner*, 46 Mich. 610, 620, it was said by Mr. Justice GRAVES, speaking for the court:

"The existence of a contract is a question independent of circumstances which may excuse its performance, and as no contract could come into existence without an agreement of minds it becomes a vital consideration whether the proposal made by Eggleston and the acts of Wagner relied on as acceptance had reference to the same thing or things in the same sense. If in answer to a proposal to grant Black Acre a person replies that he is ready to close the matter and will take White Acre there is no acceptance. Neither is there an acceptance where executory proceedings on each side are involved in the proposal and the party professing to accept introduces a variance and formulates his adoption of the offer with conditions and qualifications which essentially alter some of the constituents or materially vary the effect. In such cases no contract is brought into existence. *Kyle* v. *Kavanagh*, 103 Mass. 356 (4 Am. Rep. 560); *Suydam* v. *Clark*, 2 Sandf. (U. S.) 133; *National Bank* v. *Hall*, 101 U. S. 43; *Jordan* v. *Norton*, 4 Mees. & W. 155; *Hussey* v. *Horne-Payne*, 8 Ch. Div. 670; 25 Eng. 561; *Tilley* v. *County of Cook*, 103 U. S. 155.

"In order to convert a proposal into a promise the constituents of the acceptance tendered must comply with and conform to the conditions and exigencies of

the proposal.     The acceptance must be of that which is proposed and nothing else and must be absolute and unconditional.     Whatever the proposal requires to fulfill and effectuate acceptance must be accomplished and the acceptance must include and carry with it whatever undertaking, right or interest the proposal calls for, and there must be an entire agreement between the proposal and acceptance in regard to the subject-matter and extent of interest to be contracted. If the parties do not refer to the same things in the same sense the transaction is simply one of proposals and counter proposals.     Pollock's Principles of Contract, ch. 1; Bishop on Contracts, ch. 14; 1 Parsons Cont. b. 2, ch. 2, § ii.

"The transactions relied on as amounting to a contract of sale must be tested by these principles."

See, also, *Johnson* v. *Stephenson*, 26 Mich. 62; *Thomas* v. *Greenwood*, 69 Mich. 215; *Whiteford* v. *Hitchcock*, 74 Mich. 208; *Wilkin Manfg. Co.* v. *Lumber Co.*, 94 Mich. 158; *United States Heater Co.* v. *Applebaum*, 126 Mich. 296; *Kraus* v. *Hansen*, 182 Mich. 52; *Gannon* v. *Stansfield*, 216 Mich. 440.     The letter of May 19th was neither an acceptance nor a recognition that the contract was as claimed by defendant.     It was entirely consistent with the claim of plaintiff all the way through that the definite number of cars had not been agreed upon but that it should not exceed 25.

Had plaintiff shipped coal to defendant on receipt of the order without sending a counter proposal or making any reply, there would be much force in the contention of defendant's counsel that this constituted an acceptance; but as we have noted such was not the case.     The language of the court in *Briggs* v. *Sizer*, 30 N. Y. 647, is quite pertinent.     It was there said:

"Retention of an order may, unexplained, justify an inference of acceptance, but in this case any such inference is rebutted by the letter of the 4th of October. In that letter the defendant distinctly informs the plaintiffs that he could not then fill the order but he would *try* and send some or all of it in the course of

two or three weeks. If this letter is relied upon the plaintiffs must take the acceptance as given, and that acceptance was to try to deliver in two or three weeks a part or the whole of the carrot seed. This is no acceptance of the order. There is no promise to deliver at any time any quantity of seed.

"This letter is to be treated rather as an offer of new conditions, upon which the defendant expresses his willingness to try to deliver all or part of the seed. But, if it is thus considered, then it was incumbent on the plaintiffs to notify the defendant of their acceptance of the proposed terms. This they never did, but insisted on the letter as an acceptance of the order, and claimed damages by reason of the non-delivery of the seed."

Both parties agree that the delivery of the 7 cars of coal took the contract out of the statute of frauds. But what contract? Obviously not a written contract because there was none. The contract claimed by plaintiff for an indefinite number of cars not to exceed 25, or the contract claimed by defendant for exactly 25 cars? This was the only disputed question of fact in the case and in a short clear charge this single question was submitted to the jury. Upon this record the trial court would not have been justified in directing a verdict for either party.

Defendant took some depositions which were read on the trial. A few questions were objected to during their reading and the objections were sustained. Defendant's counsel insists that the objections should have been made while the testimony was being taken and could not be made on the trial. We have read the rejected answers and do not perceive that any of them affect the question which was submitted to the jury, or tend to establish anything which was not established by other proof or which in any way strengthen defendant's case. Under these circumstances, this question is purely academic.

Plaintiff's counsel indulged in some argument to the

jury which he might well have omitted.   The trial judge so concluded and on objection of defendant's counsel struck it out.   It was of no serious consequence and does not constitute reversible error.

The judgment will be affirmed.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.