# JANUARY TERM, 1931.*

1. FRAUDS, STATUTE OF—SALES.
   Sale of parts for trucks manufactured especially for buyer and
   not suitable for sale to others in regular course of business
   falls within exception to statute of frauds (3 Comp. Laws 1915,
   § 11835, subd. 2).

2. SALES—RESERVATION OF TITLE—DEPARTURE FROM OFFER.
   Where goods were shipped by seller with sight draft attached,
   contrary to buyer's order, and draft was not paid, title re-
   mained in seller, and therefore buyer is not liable for goods not
   delivered (3 Comp. Laws 1915, § 11851, subd. 1).

3. CONTRACTS—OFFER AND ACCEPTANCE—DEPARTURE FROM OFFER.
   Material departure from terms of offer invalidates offer as made
   and results in counter proposition, which, unless accepted, can-
   not be enforced.

Appeal from Saginaw; Browne (Clarence M.), J.
Submitted October 14, 1930. (Docket No. 71, Cal-
endar No. 35,179.) Decided January 7, 1931.

Bill by Carrollton Acceptance Corporation
against Ruggles Motor Truck Company for ap-
pointment of a receiver. Perfex Corporation and
Detroit Steel Products Company filed claims for
goods alleged to have been sold to receiver. From
an order disallowing claims, claimants appeal. Af-
firmed.

---

* Continued from Vol. 252.

*Humphrey, Grant & Henry,* for appellants.

*O'Keefe & O'Keefe,* for appellee receiver.

BUTZEL, C. J. On the application of plaintiff, a receiver was appointed by the circuit court for the county of Saginaw, in chancery, for the Ruggles Motor Truck Company, defendant. He was authorized to continue the business as a going concern, employ labor, purchase material in the usual course of trade, and do all things necessary to manufacture motor trucks. The receiver from time to time gave orders to Perfex Corporation and Detroit Steel Products Company, claimants and appellants. The nature of the claims and the defenses to them are so similar that they may be treated as one, except as otherwise indicated. In each instance orders for materials were given by the receiver on printed forms, which contained the following provisions:

"No drafts will be honored.

"Monthly statement must be rendered promptly. * * *

"Order must be acknowledged promptly.

"Raise objections, if any, before proceeding to execute."

The orders called for radiators, springs, and parts thereof especially designed and manufactured by claimants for Ruggles Motor Trucks in accordance with the blueprints furnished prior to the receivership. The goods were shipped from time to time by claimants on entirely different terms than those specified in the orders. Instead of extending credit to the receiver, a sight draft was drawn on him in each instance and sent for collection with the attached bill of lading, indorsed in blank, and

with instructions to the carrier to notify the receiver. A large number of these drafts were not honored. Upon the receiver's failure to pay the drafts, the shipments in some way not disclosed by the record, but presumably through the action of the carrier, were sent to a storage warehouse in Saginaw. · In one instance the receiver wrote to one of the claimants that he had taken up one of the drafts and expected to take up another one very shortly. He also wrote the other claimant that he expected to take up all of the drafts shortly as a reorganization was in process. The record, however, does not show that the receiver agreed to waive the terms as set forth in the orders.

Each claimant has filed a claim for the price of the goods sent in the manner indicated. It claims that upon the delivery of the goods to the carrier the title passed to the receiver, subject to a lien that claimant retained solely as security. The receiver, however, claims that there was never an acceptance of the orders as given; that each order was in excess of $100, and could not be enforced because the contract did not comply with the statute of frauds; that the title never passed to the receiver, but remained in the claimants, so that, even if the order had been accepted, the claimants could only have recovered for damages caused by breach of contract and not for the value of the goods; that claimants are precluded from suing for breach of contract because they did not take advantage of an opportunity to sell the goods to others. The judge of the lower court held that the title to the goods never passed, and that claimants could not recover for the price of the goods, nor could they recover for breach of contract, because the testimony shows that the goods could have been sold

without loss.   Claimants have appealed from the order of disallowance.

The case falls within the exception to the statute of frauds: When goods are manufactured by seller especially for the buyer and are not suitable for sale to others in the regular course of the seller's business.   Subdivision 2, section 11835, 3 Comp. Laws 1915.  The goods were manufactured solely for the particular kind of trucks made by defendant. The only parties disclosed by the record, as interested in purchasing the goods after the receiver's refusal to pay the drafts, were the purchaser of the assets at the receiver's sale, who continued to make and assemble Ruggles trucks, and also another company dealing in service for those models of cars and trucks the manufacture or assembly of which had been discontinued by the original manufacturer thereof.

The other question, however, is more difficult. Subdivisions 1 and 2 of section 20 of the uniform sales act, section 11851, 3 Comp. Laws 1915, provide as follows:

"(1) Where there is a contract to sell specific goods, or where goods are subsequently appropriated to the contract, the seller may, by the terms of the contract or appropriation, reserve the right of possession or property in the goods until certain conditions have been fulfilled.   The right of possession or property may be thus reserved notwithstanding the delivery of the goods to the buyer or to a carrier or other bailee for the purpose of transmission to the buyer.

"(2) Where goods are shipped, and by the bill of lading the goods are deliverable to the seller or his agent, or to the order of the seller or of his agent, the seller thereby reserves the property in the goods.   But if, except for the form of the bill

of lading, the property would have passed to the buyer on shipment of the goods, the seller's property in the goods shall be deemed to be only for the purpose of securing performance by the buyer of his obligations under the contract.''

As Professor Williston has pointed out in his work on Sales (2d Ed.), Vol. 2, § 560-b, these provisions of the act present a troublesome problem for it is at times difficult to tell whether the title has passed or whether it is held solely as security. In the present instance, however, orders specifying certain terms were sent by the receiver to claimants. They did not accept them but made a counterorder by sending the goods on different terms. There is no showing that the minds of the parties met and that there was a contract. At most, it can be said that the goods were sent to the receiver with an offer that upon payment of the drafts the title would pass to him. Until he did so, the title remained in the claimants. Under subdivision 1 of section 20 of the Uniform Sales Act, *supra,* the title remained in the claimants. Any material departure from the terms of an offer invalidates the offer as made and results in a counter proposition, which, unless accepted, cannot be enforced. *Baird* v. *Pratt,* 78 C. C. A. 515 (148 Fed. 825, 10 L. R. A. [N. S.] 1116); *St. John Brothers Co.* v. *Falkson,* 237 Mass. 399 (130 N. E. 51); *Williams* v. *Emerson-Brantingham Implement Co.* (Mo. App.), 198 S. W. 425.

The order of the lower court is affirmed, with costs.

WIEST, CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.