COMMUNITY NATIONAL BANK OF PONTIAC v MICHIGAN
BASIC PROPERTY INSURANCE ASSOCIATION

Docket No. 85682. Submitted June 26, 1986, at Detroit. Decided April 21, 1987. Leave to appeal applied for.

Plaintiff Community National Bank of Pontiac, to secure a loan to Adil and Maryann Akrawi for the purchase of a grocery business, later called the Seaway store, took a security interest in the contents of the store and required that the Akrawis insure the contents with the bank shown as the loss payee on the policy. Defendant Michigan Basic Property Insurance Association (MBPIA) issued a policy to Maryann Akrawi for $175,000, covering inventory and fixtures, naming the bank as the loss payee. The store building and contents were thereafter destroyed by fire. The Akrawis made a claim under the policy and the bank sent a letter to MBPIA advising it of the bank's interest under the contents policy and requesting that it be included in any disbursements. The Akrawis' claim was denied by MBPIA on grounds of fraud, false swearing and arson. The Akrawis then brought suit to collect under the policy. The Akrawis then executed written agreements which acknowledged their indebtedness to the bank in the amount of $135,385.54 on the Seaway store and $177,000 on another loan relating to another grocery store, the Palmer Park store. In both agreements, the Akrawis promised to prosecute their suit against MBPIA in return for the bank's promise not to enforce the notes pending the litigation. The Akrawis and MBPIA reached a settlement agreement which was placed on the record. MBPIA then issued a settlement draft in the amount of $110,000, payable to the Akrawis, their attorney, Mid-West Fire Adjusters (their public adjusters), the State of Michigan (which

REFERENCES

Am Jur 2d, Insurance §§ 475-496, 1883 et seq.

Insured's right to recover from insurer prejudgment interest on amount of fire loss. 5 ALR4th 126.

Validity of contractual time period, shorter than statute of limitations, for bringing action. 6 ALR3d 1197.

Time period for bringing action on standard form fire insurance policy provided for by statute, as running from time of fire (when loss occurs) or from time loss is payable. 95 ALR2d 1023.

held a tax lien on the property) and the bank. The Akrawis refused to accept the check and filed a motion to enforce the settlement, as stated on the record, demanding that the check be made payable solely to the Akrawis and their attorney. The bank filed a response to the motion and also filed a motion to intervene. The lower court denied the bank's motion to intervene and ordered MBPIA to issue one settlement draft to the State of Michigan for $11,864.71, and one to the Akrawis and their attorney in the amount of $98,135.29. Since the Akrawis' debt exceeded the amount of the settlement, less attorney fees, the bank would have received all of the net settlement proceeds had it been named on the check as required under the loss-payee clause. The bank then commenced the instant action in the Wayne Circuit Court against MBPIA, the Akrawis, the state, the Akrawis' business partner and the Akrawis' attorney seeking recovery on the loans for both stores. As against MBPIA, the bank sought damages for MBPIA's failure to comply with the insurance contract provision requiring that the settlement of any claim under the policy be made payable to both the insured and the bank to the extent of their respective interests. MBPIA responded with a motion for accelerated judgment based on the running of a one-year period of limitation. MBPIA argued that the bank's cause of action arose when the fire occurred. The bank argued that its cause of action did not accrue until MBPIA issued the settlement draft which excluded the bank. The trial court, Henry J. Syzmanski, J., denied MBPIA's motion. The bank and the Akrawis then reached a settlement whereby the Akrawis agreed to pay $50,000 against their indebtedness to the bank and the bank promised not to sue the Akrawis for the balance, but reserved its right to proceed against others. The bank thereafter filed a motion for summary judgment as to the issue of MBPIA's liability. The trial court granted summary judgment in the bank's favor. A subsequent motion by MBPIA to set aside the order granting the summary judgment was then denied and a judgment was entered. MBPIA appeals from the judgment entered in favor of the bank, the order denying MBPIA's motion for accelerated judgment and the order granting the bank's motion for summary judgment on the issue of liability, all entered by the trial court, Henry J. Syzmanski, J. MBPIA also appeals from an order by Michael L. Stacey, J., denying MBPIA's motion to disqualify the trial judge.

The Court of Appeals *held:*

1. The twelve-month period of limitation for commencing an action on the policy issued to the Akrawis was satisfied with regard to the question of whether the Akrawis had suffered a

loss insured by MBPIA when the Akrawis timely filed their lawsuit. MBPIA's breach of the loss-payee clause did not occur until MBPIA issued a check to the Akrawis omitting the bank as loss payee. The bank had twelve months from that date within which to file suit. The bank's complaint was timely and the trial court properly denied MBPIA's motion for accelerated judgment.

2. The affidavit submitted by MBPIA's attorney fails to establish any material factual disputes on the issue of MBPIA's liability.

3. There are no material factual disputes with respect to the amount of the bank's damages. The $50,000 paid by the Akrawis to the bank in settlement of this action should not be deducted from the judgment entered against MBPIA. The Court of Appeals, for the sake of clarification, amended the trial court's judgment to read $98,000, exclusive of interest and costs, and left it to the parties to work out the amount of interest owed.

4. The trial court's order of summary judgment need not be reversed on the basis that MBPIA's obligation to pay the bank under the insurance policy was rendered either impossible or impractical by the trial court's order enforcing the settlement agreement from the prior litigation.

Affirmed as modified.

1. INSURANCE — LOSS PAYEES.

A loss payee's right to recover from an insurer is dependent upon and no greater than the right of the insured to recover on the underlying claim.

2. INSURANCE — FIRE INSURANCE — LIMITATION OF ACTIONS.

The provision in a standard fire insurance policy providing that no suit or action on the policy for the recovery of any claim shall be commenced later than twelve months after inception of the loss should not be interpreted as requiring two separate and identical lawsuits on a claim for a single fire loss by the insured and the loss payee; the period of limitation is satisfied with regard to the question of whether the insured had suffered a loss insured where the insured timely files his lawsuit; where the insurer then issues a check to the insured omitting the loss payee, the loss payee has twelve months from that date within which to file suit (MCL 500.2832; MSA 24.12832).

*Bodman, Longley & Dahling* (by *James J. Walsh* and *Robert J. Diehl, Jr.*), for plaintiff.

*Stephen M. Wittenberg, P.C.* (by *Stephen M. Wittenberg*), for defendant.

Before: M. J. KELLY, P.J., and J. H. GILLIS and J. R. ERNST,* JJ.

M. J. KELLY, P.J. Defendant Michigan Basic Property Insurance Association (MBPIA) appeals as of right from a judgment entered in favor of plaintiff Community National Bank of Pontiac on May 31, 1985. MBPIA also appeals from an order denying its motion for accelerated judgment, an order granting the bank's motion for summary judgment on the issue of liability and an order denying MBPIA's motion to disqualify the trial judge. We affirm the orders and judgment as modified.

In 1976, Adil and Maryann Akrawi received a loan from the bank in order to purchase a grocery business later called the Seaway store. To secure the loan, the bank took a security interest in the contents of the Seaway store and required that the Akrawis insure the contents with the bank shown as the loss payee on the policy. MBPIA issued two policies of insurance, one to Maryann Akrawi for $175,000, which covered inventory and fixtures, and another to Adil Akrawi for $45,000, covering the building. The bank was named as the loss payee under the contents policy issued to Maryann Akrawi and was not so named under the policy covering the building. The Akrawis were purchasing the building and property on a land contract.

On January 3, 1978, while the policies were in effect, a fire destroyed the building and its contents. The Akrawis made claims under both policies issued by MBPIA. The bank also sent a letter to MBPIA advising it of the bank's interest under the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

contents policy and requesting that it be included in any disbursements. The Akrawis' claim was denied by MBPIA on grounds of fraud, false swearing and arson.

The Akrawis then brought suit to collect under their insurance policies. While that action was pending, the Akrawis executed a written agreement in June of 1981, which acknowledged their indebtedness to the bank for the loan on the Seaway store in the amount of $126,949.70. In addition, the Akrawis acknowledged their indebtedness to the bank on another loan relating to a grocery store known as the Palmer Park store. That agreement was later amended in September, 1982, to account for the accrual of additional interest. The Akrawis then owed $135,385.54 on the Seaway store and over $177,000 on the Palmer Park store. In both agreements, the Akrawis promised to prosecute their suit against MBPIA in return for the bank's promise not to enforce the notes pending the litigation.

On September 17, 1981, the day on which the Akrawis' suit against MBPIA was scheduled for trial, the parties reached a settlement agreement which was placed on the record. MBPIA then issued a settlement draft in the amount of $110,000, payable to the Akrawis, their attorney, Mid-West Fire Adjusters (their public adjusters), the State of Michigan (which held a tax lien on the property) and the bank. The Akrawis refused to accept the check and filed a motion to enforce the settlement, as stated on the record, demanding that the check be made payable solely to the Akrawis and their attorney.

MBPIA gave the bank notice of the hearing on the motion. The bank filed both a response and its own motion to intervene. However, the lower court denied the bank's motion to intervene and ordered

MBPIA to issue two settlement drafts, one to the State of Michigan for $11,864.71, and one to the Akrawis and their attorney in the amount of $98,135.29. The bank points out that, since the Akrawis' debt exceeded the amount of the settlement, less attorney fees, it would have received all of the net settlement proceeds ($98,000) had it been named on the check as required under the loss-payee clause.

The bank immediately commenced the instant action in January of 1982 against MBPIA, the Akrawis, the state, the Akrawis' business partner and the attorney who represented the Akrawis in the prior action, seeking recovery on the loans for both the Seaway store and the Palmer Park store. As against MBPIA, the bank sought damages for MBPIA's failure to comply with the provision of the insurance contract which required that the settlement of any claim under the policy be made payable to both the insured and the bank to the extent of their respective interests. MBPIA responded to the complaint with a motion for accelerated judgment based on the one-year period of limitation contained in the policy and in MCL 500.2832; MSA 24.12832. At a hearing held February 19, 1983, MBPIA argued that the bank's cause of action arose in January of 1978, when the fire occurred. The bank argued that its cause of action did not accrue until September of 1981, when MBPIA issued the settlement draft which excluded the bank. The trial court denied MBPIA's motion.

The bank then reached a settlement with the Akrawis, whereby the Akrawis agreed to pay $50,-000 against their indebtedness to the bank. The bank promised not to sue them for the balance, but reserved its right to proceed against others.

On October 23, 1984, the bank filed a motion for summary judgment pursuant to GCR 1963,

117.2(3) as to the issue of MBPIA's liability. The trial court granted summary judgment in the bank's favor, and a subsequent motion by MBPIA to set aside the order was denied. Judgment was entered May 31, 1985, and defendant MBPIA now appeals.

Defendant first argues that the trial court erred in denying its motion for accelerated judgment based on the statute of limitation. Defendant had issued Maryann Akrawi a standard fire insurance policy providing, as required by MCL 500.2832; MSA 24.12832, that "[n]o suit or action on this policy for the recovery of any claim" shall be commenced later than "twelve months next after inception of the loss." In *Ford Motor Co v Lumbermens Mutual Casualty Co,* 413 Mich 22, 38; 319 NW2d 320 (1982), the Supreme Court interpreted this provision in light of other provisions required in the standard fire insurance policy, and held that although the twelve-month period commences running from the date of loss, it is tolled from the time the insured provides notice of loss until the insurer formally denies liability.[1]

It is undisputed in this case that the Akrawis filed notice of loss almost immediately after the fire in January of 1978 and that defendant formally denied liability on the policy shortly thereafter. The Akrawis then filed suit within twelve months after the date defendant formally denied

---

[1] Application of a twelve-month rather than a six-year period of limitation is not in dispute. We note that in *Hearn v Rickenbacker,* 428 Mich 32; 400 NW2d 90 (1987), the Supreme Court considered the twelve-month limitation period contained in MCL 500.2832; MSA 24.12832, though in a different context, and held that it applied to any action premised on the breach of a duty imposed under an insurance contract. Where the duty breached exists "independent of and apart from" the insurance contract, the twelve-month period of limitation does not govern. 428 Mich 40. In both the original and amended complaint, plaintiff in this case asserts an action for breach of the insurance contract.

their claim. The instant action was not filed until January of 1982. Defendant argues that as loss payee plaintiff was also obligated to file suit within twelve months after the claim had been denied and that its failure to do so now bars the instant action.[2] We disagree.

The status of a loss payee has recently been described by this Court as follows:

> The entity designated as loss payee is merely an appointee who receives the proceeds to the extent of his interest. The validity of the contract is not dependent upon the existence of an insurable interest in the loss payee. Under an open loss clause, the policy is subject to any act or omission of the insured which might void, terminate, or adversely affect coverage. If the policy is not collectible by the insured, as in this case because it was cancelled by the insured, the loss payee also cannot recover. [*Gallant v Lake States Mutual Ins Co*, 142 Mich App 183, 187; 369 NW2d 205 (1985).]

Thus, the bank's right to recover from MBPIA as a loss payee is dependent upon and no greater than the right of the Akrawis to recover on the underlying claim. The Akrawis' timely lawsuit adequately informed MBPIA that there was a dispute regarding its liability on the fire loss. The bank had also informed MBPIA in writing of its interest under the policy as a loss payee. There is no evidence that MBPIA denied the bank's right to recover as a loss payee in the event the Akrawis' claim was valid. Once the Akrawis filed their lawsuit, any action by the bank against MBPIA would have been redun-

---

[2] Plaintiff incorrectly argues in its brief on appeal that the loss payee cannot file an independent action against the insurer. We do not agree. Although the loss payee's right of recovery is dependent upon the recovery rights of the insured, the loss payee may separately sue on the policy. An essential element of any such action would be proof that the named insured had a right of recovery. 5A Appleman, Insurance Law & Practice, 1986 Cum Supp, § 3335, p 25.

dant. Since MBPIA is charged with knowledge of the provisions of its insurance contract, we fail to see any advantage to MBPIA in requiring the bank to file a suit identical to that filed by a named insured.

A similar scenario was presented in *Ford Motor Credit Co v Aetna Casualty & Surety Co,* 717 F2d 959 (CA 6, 1983), where plaintiff Ford received a security interest in certain industrial equipment as collateral for two promissory notes. A standard casualty insurance policy was issued by defendant Aetna to the owner of the industrial equipment covering the same. After a fire occurred damaging the equipment, the owner filed a timely proof of loss statement with the defendant, and later brought suit. At a jury trial, a verdict was returned in favor of the defendant based upon the commission of fraud by the owner.

While the dispute between defendant and the owner of the industrial equipment was pending, plaintiff Ford sent a letter to defendant requesting payment under the insurance policy. A proof of loss statement was filed by Ford pursuant to the defendant's request, and when defendant failed to honor its claim, Ford filed suit. 717 F2d 961. After both parties brought motions for summary judgment, the trial court found that Ford was a "mortgagee" under the insurance policy and thus (unlike a loss payee) its rights under the policy were unaffected by the owners' fraud. Nonetheless, summary judgment was granted in favor of Aetna due to Ford's failure to bring the action within twelve months from the date of loss, based on MCL 500.2832; MSA 24.12832.

On appeal the federal appeals court reversed, finding that plaintiff Ford could rely upon the fact that the insured owner of the equipment brought suit against Aetna within the one-year limitation

period. The court noted that the owner's suit "rendered a similar suit by Ford duplicative and unnecessary." 717 F2d 962. The court concluded that any ambiguity in the limitations clause must be construed in favor of plaintiff Ford and against the insurer. *Id.*

We find that a similar result is appropriate in the instant case. We see no reason to interpret MCL 500.2832; MSA 24.12832 as requiring two separate and identical lawsuits on a claim for a single fire loss. When the Akrawis timely filed their lawsuit, the twelve-month period of limitation was satisfied with regard to the question of whether the Akrawis had suffered a loss insured by MBPIA. Defendant's breach of the loss-payee clause of the insurance policy did not occur until defendant issued a check to the Akrawis omitting the bank as loss payee. We hold that plaintiff had twelve months from that date within which to file suit. Plaintiff's complaint filed in January of 1982 was timely and the trial court properly denied defendant's motion for accelerated judgment.

Defendant's remaining arguments are without merit. The affidavit submitted by defendant's attorney fails to establish any material factual disputes on the issue of defendant's liability. Although there are factual disputes existing between these parties, defendant has failed to establish that the disputes are relevant or material to its defense of the instant action. To the extent that some of these disputes were not raised before the trial court, we decline to consider them at the appellate level. "There can be no disputed issue of material fact where the dispute is not brought to the attention of the trial court." *Frank v Equitable Life Assurance Society of the United States,* 136 Mich App 616, 619; 358 NW2d 21 (1984).

Defendant also argues that there are material

facts and disputes with respect to the amount of plaintiff's damages. We disagree. In awarding damages, the trial court relied upon the affidavit offered by plaintiff setting forth in detail the calculations relied upon in assessing damages. The judgment of $144,020.05 represents the $98,000 recovered by the Akrawis in the prior action ($110,000 minus $12,000 in attorney fees)[3] plus prejudgment interest authorized by statute. We are not persuaded that the $50,000 paid by the Akrawis to plaintiff in settlement of this action should be deducted from the judgment entered against defendant. Plaintiff in this action sought to recover from the Akrawis an indebtedness under two separate loan agreements of over $300,000. For the sake of clarification, however, we amend the judgment to read $98,000, exclusive of interest and costs. We leave it to the parties to work out the amount of interest owed. If they disagree resort may be had to the trial court. We do not retain jurisdiction.

Nor are we persuaded that the trial court's order of summary judgment should be reversed because defendant's obligation to pay plaintiff under the insurance policy was rendered either impossible or impractical by the trial court's order enforcing the settlement agreement from the prior litigation. Defendant was well aware of the loss-payee clause in the policy issued to the Akrawis and could have interpleaded plaintiff in the prior litigation.[4]

We decline to consider the remaining issues set forth in defendant's brief since they were either

---

[3] We decline to consider the propriety of deducting attorney fees since no one has questioned this computation on appeal.

[4] The bank probably could have appealed from the trial court's denial of its motion to intervene in the prior litigation but we are not called upon to deal with that record or that strategy.

not raised below or are given only cursory treatment in defendant's brief with little or no citation of supporting authority. *In re Futch,* 144 Mich App 163, 166; 375 NW2d 375 (1984).

Affirmed as modified.