## GIANNETTI v CORNILLIE

Docket No. 135381. Submitted October 5, 1993, at Detroit. Decided
   March 21, 1994, at 9:30 A.M. Leave to appeal sought.

    Patrick J. and Anne T. Giannetti brought an action in the
   Macomb Circuit Court against Charles J., Michael S., and
   Henry L. Cornillie, seeking specific performance of an agree-
   ment to sell real estate. The defendants had listed their de-
   ceased mother's home for sale. The plaintiffs made an offer and
   submitted a deposit. The defendants made a counteroffer. The
   plaintiffs purportedly accepted the counteroffer, but increased·
   the amount to be mortgaged and initialed the change. The real
   estate agent did not submit this modification for the defen-
   dants' approval, but, rather, told the defendants that the plain-
   tiffs had accepted the counteroffer. The defendants signed all
   the necessary probate court papers for the sale of the property
   but, before the closing, sought to rescind the deal. The plaintiffs
   declined and brought this action. The court, Frederick D.
   Balkwill, J., ordered specific performance, and determined dam-
   ages. The defendants appealed and the plaintiffs cross appealed.

    The Court of Appeals *held:*

    1. The trial court erred in finding that there was a contract
   where the defendants never agreed to the plaintiffs' change in
   the mortgage amount. It is clear from the terms of the pur-
   chase offer that the obligation to buy the property was contin-
   gent upon the plaintiffs' ability to obtain a thirty-year conven-
   tional mortgage in the amount written on the form. By chang-
   ing the mortgage amount, the plaintiffs modified a condition
   precedent to the existence of a binding agreement. Therefore,
   the modification was material and the plaintiffs' purported
   acceptance was only a counteroffer. Because the modification
   was not initialed by the defendants, the contract was void
   under the statute of frauds, MCL 566.106; MSA 26.906.

    2. Although the plaintiffs obtained the requisite mortgage

REFERENCES
Am Jur 2d, Contracts §§ 16, 41, 43, 65.
See ALR Index under Contracts; Offer and Acceptance.

and the defendants executed the appropriate sale documents with the probate court, those actions do not constitute partial performance sufficient to take the alleged agreement out of the operation of the statute of frauds.

Reversed.

TAYLOR, P.J., dissenting, stated that all the elements of a real estate contract were present in this case. The trial court, by discerning as a question of fact what the parties intended, properly determined that a change in the manner in which the consideration was to be paid did not constitute a material change in the contract terms such that no meeting of the minds occurred. The court properly ascertained whether the defendants thought the change in the mortgage amount was material by looking at the defendants' conduct after seeing the change, and properly concluded that the defendants' actions evidenced their belief regarding a meeting of the minds and their position regarding a valid contract.

1. CONTRACTS — OFFERS — COUNTEROFFERS.

An offer is a unilateral declaration of intention and is not a contract; a counterproposal is not an acceptance of an offer; a proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer and puts an end to the negotiations unless the party who made the original offer renews it or agrees to the suggested modification.

2. CONTRACTS — OFFERS — COUNTEROFFERS — MATERIAL ALTERA-TIONS.

A contract is made when both parties have executed or accepted it; an acceptance must be unambiguous and in strict confor-mance with an offer; any material departure from the terms of an offer invalidates the offer as made and results in a counter-proposition that, unless accepted, cannot be enforced; it is only by determining the legal effect of an instrument before and after an alteration that it is possible to decide whether the change is material.

*Lizza & Mulcahy, P.C.* (by *John B. Lizza*), for the plaintiffs.

*Rupp, Ehrlich, Foley & Serwer, P.C.* (by *Joseph H. Ehrlich*), for the defendants.

Before: TAYLOR, P.J., and HOOD and B. A. JAS-
PER,* JJ.

HOOD, J. Defendants appeal as of right from the
trial court's judgment granting plaintiffs' petition
for specific performance of an alleged agreement to
sell real estate. Plaintiffs cross appeal from the
trial court's determination of damages. We re-
verse.

Defendants were the copersonal representatives
of their mother's estate. In that capacity, they
listed her home for sale with a real estate agent.
Plaintiffs offered $155,000 for the home and sub-
mitted a $2,500 deposit. Defendants counteroffered
to sell the home for $160,000.

Upon receiving the counteroffer, plaintiffs orally
inquired whether certain items could be included
with the home.[1] Defendants declined. Plaintiffs
then purportedly accepted the counteroffer, but
changed the mortgage amount from $124,000 to
$128,000 and initialed the change. The real estate
agent did not submit this modification for defen-
dants' approval, but, rather, told defendants that
plaintiffs had accepted their counteroffer. Defen-
dants signed all the necessary probate court pa-
pers for the sale of the property. However, before
the closing, defendants sought to rescind the deal.[2]
Plaintiffs declined and sued for specific perfor-
mance.

Defendants' main argument is that the trial
court clearly erred in finding that there was a
contract where defendants never agreed to plain-

---

* Recorder's Court judge, sitting on the Court of Appeals by assign-
ment.

[1] Specifically, plaintiffs sought to have a lawn tractor and certain
patio furniture included with the home.

[2] The deal was rescinded because defendant Henry Cornillie wanted
to purchase the home for himself and his wife.

tiffs' change in the mortgage amount. We reluctantly agree.

As argued by defendants, "[a]n offer is a unilateral declaration of intention, and is not a contract. A contract is made when both parties have executed or accepted it, and not before. A counterproposition is not an acceptance." *Kamalnath v Mercy Memorial Hosp Corp,* 194 Mich App 543, 549; 487 NW2d 499 (1992) (citations omitted). An acceptance must be "unambiguous and in strict conformance with an offer." *Dassance v Nienhuis,* 57 Mich App 422, 431; 225 NW2d 789 (1975). " '[A] proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested.' " *Harper Bldg Co v Kaplan,* 332 Mich 651, 656; 52 NW2d 536 (1952) (quoting *Thomas v Ledger,* 274 Mich 16, 21; 263 NW 783 [1935]). Thus, " '[a]ny material departure from the terms of an offer invalidates the offer as made and results in a counter proposition, which, unless accepted, cannot be enforced.' " *Harper, supra* at 655 (quoting *Carrollton Acceptance Co v Ruggles Motor Truck Co,* 253 Mich 1, 5; 234 NW 134 [1931]).

Plaintiffs argue that the modification of the mortgage amount did not vitiate their purported acceptance because the mortgage amount, unlike the purchase price, was not a material term of the contract. We disagree.

It is clear from the terms of the purchase offer that the obligation to buy the property was "contingent upon [the] Purchaser's ability to obtain a 30 year conv[entional] mortgage" in the amount written on the form. Thus, by changing the mortgage amount, plaintiffs modified a condition precedent to the existence of a binding agreement.

Therefore, the modification was material and their purported acceptance was only a counteroffer. See *Marshall Mfg Co v Berrien Co Package Co,* 269 Mich 337, 339; 257 NW 714 (1934) ("The acceptance must be absolute and unconditional, and if conditions are attached or if it differs from the offer, the transaction amounts only to a proposal and a counter-proposal.").

In other words, before the change, plaintiffs were obligated to buy the property if they obtained a mortgage for $124,000; after the change, no obligation to buy arose unless they obtained a $128,000 mortgage. Thus, the modification had the legal effect of widening the door through which plaintiffs could escape the contract and it was therefore material. See *Anderson v Donato,* 224 Mich 216, 218; 193 NW 805 (1923) ("It is only by determining the legal effect of the instrument before the alteration and after the alteration that it is possible to decide whether the change is material or not."). Because the modification was not initialed by defendants, the contract was void under the statute of frauds. MCL 566.106; MSA 26.906.

Because the purchase offer itself clearly states that "no promises have been made other than those that are in writing and signed by all parties involved (no verbal agreements will be binding)," we may not consider plaintiffs' contention that, although the purchase offer does not say so, the parties contemplated that eighty percent of the purchase price would be financed and that their modification of the mortgage amount merely reflected that understanding. Likewise, the fact that plaintiffs obtained the $128,000 mortgage does not constitute partial performance sufficient to take the alleged agreement out of the operation of the statute of frauds. See *Thorbahn v Walker's Estate,*

269 Mich 586, 591; 257 NW 892 (1934) (neither full nor partial payment is sufficient to take an agreement relating to realty out of the statute of frauds). The same is true of defendants' execution of the appropriate sale documents with the probate court.

In light of our decision, it is unnecessary to consider defendants' argument that plaintiffs voided the agreement by not applying for a mortgage within five days.[3] We also decline to consider plaintiffs' cross appeal regarding the calculation of damages.

Reversed.

B. A. JASPER, J., concurred.

TAYLOR, P.J. *(dissenting).* In the present case, the plaintiffs (buyers) offered $155,000 for the house, indicating that $124,000 of that sum (eighty percent of the purchase price) was to be secured by a mortgage. Defendants (sellers) made a counter-offer of $160,000, and left the $124,000 mortgage amount unchanged. Plaintiffs signed the counter-offer, but changed the amount of the price to be mortgaged to $128,000 (eighty percent of the agreed-upon price). The trial court found as fact that defendants saw (although they did not initial) the change made by plaintiffs, and conducted themselves in such a fashion as to indicate by their actions that the change was not a material term of the contract. I would affirm the decision of the trial court.

It is well-established contract law that the material elements of a real estate contract are the

---

[3] Defendants' argument that the trial court deprived them of a fair trial by not allowing them to present rebuttal testimony is perfunctory and unsupported by the record. We therefore decline to consider it. *Community Nat'l Bank of Pontiac v Michigan Basic Property Ins Ass'n,* 159 Mich App 510, 520-521; 407 NW2d 31 (1987).

identity of the property, the parties, and the consideration. *Brotman v Roelofs,* 70 Mich App 719, 727; 246 NW2d 368 (1976). Such a contract must be in writing, specify the time of performance, and be signed by the parties in order to comport with the statute of frauds, MCL 566.106; MSA 26.906. *McFadden v Imus,* 192 Mich App 629, 633; 481 NW2d 812 (1992). These requirements have all been met in the present case. The issue presented is whether a change in the manner in which consideration was to be paid constituted a material change in contract terms such that no meeting of the minds occurred, i.e., no contract was formed. *Guyan Coal & Coke Co v Wholesale Coal Co,* 229 Mich 257, 260; 201 NW 194 (1924); *Kamalnath v Mercy Memorial Hosp Corp,* 194 Mich App 543, 548; 487 NW2d 499 (1992). This question may be answered by discerning what the parties intended, yet the majority treats the materiality question as if it were a question of law rather than a question of fact. I would find that the trial court properly ascertained whether defendants thought the change in the mortgage amount was material by looking to defendants' conduct after seeing the change. *Kamalnath, supra,* and cases therein cited.

In this regard, the trial court made the following factual findings:

> [I]n determining whether there was a meeting of the minds, a court examines the visible acts of the parties. Defendants signed the petition for confirmation [of the sale in the probate court] . . . [and] the necessary probate documents for confirmation of the sale were filed . . . . All of these actions were done after defendants initially attempted to revoke the counter-offer. However, defendant Henry Cornillie [who wanted to buy the house himself] claimed he signed these papers in error as he did not know what he was signing. The Court is

not persuaded by this defendant's testimony as to these facts. The Court finds Henry is an intelligent man of at least average business mentality. The Court does not believe an independent business-man, such as Henry . . . would not review the documents prior to signing them. Henry signed the probate forms and will not now be heard to say he did not review them. The Court concludes the defendants' actions evidence[d] their belief as to a meeting of the minds and their position as to a valid contract.

After a thorough review of the record, I conclude that the trial court's findings represent a fair interpretation of the evidence presented at trial, and so would affirm.