*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RAMAN SAGMANI,

          Plaintiff-Appellant,

v

GHASSAN AHMAD,

          Defendant-Appellee.

UNPUBLISHED
October 08, 2024
1:48 PM

No. 366995
Oakland Circuit Court
LC No. 2022-193366-CH

Before: BOONSTRA, P.J., and JANSEN and N. P. HOOD, JJ.

PER CURIAM.

In this action for declaratory relief and specific performance, alleging breach of a land contract, plaintiff appeals as of right the circuit court's order granting a directed verdict in favor of defendant. On appeal, plaintiff contends the trial court erred by granting the directed verdict because (1) the trial court's finding that plaintiff did not comply with the payment terms of the contract misapplied the law concerning contract modifications, and (2) the trial court failed to consider defendant's failure to fulfill his contractual obligations by preventing plaintiff from paying the contract balance. We vacate the trial court order granting defendant a directed verdict and remand for entry of a judgment in plaintiff's favor.

## I. BACKGROUND FACTS

Plaintiff and his wife began renting a house in Troy owned by defendant in July 2014. The monthly rental payment was $1,600. In June 2016, defendant agreed to sell the property to plaintiff. The "purchase agreement" executed by the parties stated, "Buyer agrees to pay the sum of two hundred forty thousand 00/100 dollars ($240,000.00) in consideration for which seller will provide a warranty deed." A "land contract sale addendum" executed as part of that agreement stated:

> Sale on Land Contract Down Payment of the sum of $30,000.00 and the execution of a Land Contract acknowledging payment of that sum and calling for the payment of the remainder of the purchase money within 5 years from the date of the Contract at a rate of 0 percent per annum.

-1-

The land contract addendum specified that the agreement included a "Land Contract principal and Interest payment of $1,600.00." The addendum also included the following term:

> Purchaser and Seller understand that the regular monthly payments called for by the terms of the land contract will not pay the land contract amount owing in full by the end of the term of the contract. There will be a lump sum payment due from Purchaser to Seller at that time.

Plaintiff made payments for the subject property during the contract term. At the end of the term, defendant had an outstanding mortgage on the property. Plaintiff commenced this action nine months after the end of the contract term, alleging that he had "advised [defendant] that he is ready, willing, and able to pay off the remaining balance on the Land Contract, and to either assume or pay off the mortgage that remains on the Property," but that defendant had "failed and/or refused to provide Plaintiff with payoff figures."

Plaintiff requested declaratory relief, including determinations of "what amount, if any, he is required to pay Defendant," and "what amount, if any, he is required to pay to Defendant's mortgage company." Plaintiff also asked the trial court to order defendant to "convey the Property to Plaintiff by way of a Warranty Deed." Plaintiff additionally claimed breach of contract, asserting that he was entitled to specific performance, including defendant producing a payoff statement, accepting plaintiff's final payment, and providing plaintiff with a warranty deed.

At trial, plaintiff's wife testified that she and the parties were together while she filled out the sale-agreement forms according to their understandings, and the parties signed them. She further stated that defendant asked her and plaintiff to make their monthly payments by paying $1,000 directly to defendant's mortgage company and $600 to defendant, and that the parties agreed that all $1,600 would be deducted from the balance plaintiff owed to defendant. Plaintiff's wife additionally testified that, near the end of the agreement term, she and her husband requested the warranty deed and a statement regarding how much of the purchase price plaintiff still owed, but that they received neither, and defendant attempted to renegotiate the agreement. She reported that she and plaintiff had paid $211,400 of the $240,000 purchase price, but defendant told them that they were also responsible to pay off defendant's mortgage.

Plaintiff confirmed many aspects of his wife's testimony, and added that the arrangement of splitting the monthly payment between defendant and the mortgage company dated back to when he and his wife were renting the home. According to plaintiff, the parties agreed that the arrangement would continue as part of the sale agreement.

Defendant testified he agreed to sell the subject property to plaintiff for $240,000. However, he stated the $600 that was paid to him every month was an interest payment which was not deducted from the balance plaintiff owed. Defendant also testified that the parties agreed on an interest rate of 7%, and that plaintiff's wife had written that under a contract form line when he signed it, but that the "7" was later crossed out and "0" was entered on that line without his approval. Defendant confirmed that he asked plaintiff to pay $1,000 of the monthly amount directly to the mortgage company. Defendant also testified that, although it was not in the written sale agreement, he orally told plaintiff that he was responsible for paying off the mortgage.

Defendant further testified he would not have accepted a check for what plaintiff thought he owed at the end of the term.

The parties both moved the trial court for a directed verdict. The trial court opined that plaintiff's monthly method of paying $1,000 directly to the mortgage company and $600 directly to defendant, without putting that arrangement in writing, was part of the reason for the dispute. Plaintiff responded that defendant requested this arrangement. The exchange continued as follows:

> [*Plaintiff's Counsel*]: . . . [T]he parties had established the manner of payment in the two years prior to even signing . . . the purchase agreement. The . . . testimony in this case was that [defendant] had left the country during the time that [plaintiff and his wife] were leasing the property from him, not when they had . . . purchased the [subject] property.
>
> And . . . it's well settled that the parties to a contract can modify or waive the terms of an agreement . . . . So . . . the party that was being paid here directed the manner of payment . . . , and he was the only party that could tell [plaintiff and his wife] where and how to send the payment. He did that. They did exactly what he asked them to do from the . . . date that the contract was signed.
>
> * * *
>
> *The Court*: But it's, it's a contract . . . with respect to [real] property. They can't verbally alter it. . . .
>
> * * *
>
> . . . Now, if you want to modify that, you get it in writing with everybody signing it and then you have a legal document that says I did what I was supposed to do and now it's your turn to do what you're supposed to do.
>
> I'm not saying that they couldn't have agreed to that split payment. What I'm saying is that they should have agreed to that and put it in writing and signed it so that there was something for the court to say, yes, this is what the agreement of the parties is.
>
> [*Plaintiff's Counsel*]: Right.
>
> *The Court*: That is not what the case is here. The case is that they were supposed to pay $1,600 to [defendant].
>
> * * *
>
> *The Court*: So that is what the contract says. What they chose to do because of what they verbally agreed to do—(pause)—I'm sorry—
>
> [*Plaintiff's Counsel*]: Well—

-3-

> *The Court*: —it's not . . . the issue here.

> \* \* \*

> What I'm saying is that the terms of the contract were not followed. If this is a valid contract, the terms were not followed based upon the contract. . . . Why they paid what they did and how they did is not part of the contract. The contract says $1,600 to the vendor.

The court then ruled on the cross-motions:

> As it relates to the plaintiff's request for a motion for directed verdict, the court is denying that motion . . . based upon the fact that this court does not feel that there is a justiciable issue before this court at this time.

> As it relates to . . . the defendant's request for a directed verdict, the court is going to grant that in the sense that the contract in this matter being a land contract was, number one, not adhered to the way it was written. Number two, . . . it is . . . premature because the plaintiffs haven't actually tendered a check for what they believed was the payoff balance in this, to the defendant, . . . merely because he says I'm not going to accept it. They should have tendered the payment and, upon his non cashing of the payment or whatever, then they would have had the right to come before this court and ask for specific performance. So the issue isn't ripe.

The trial court entered orders denying plaintiff's motion, granting defendant's motion, and dismissing the complaint. This appeal followed.

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for a directed verdict is reviewed de novo. *Krohn v Home-Owners Ins Co*, 490 Mich 145, 155; 802 NW2d 281 (2011). This Court reviews all the evidence presented up to the time of the motion to determine whether there was a question for the fact-finder. See *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 455; 750 NW2d 615 (2008). We must, as must the trial court, view the evidence in the light most favorable to the nonmoving party. See *Elezovic v Ford Motor Co*, 472 Mich 408, 418; 697 NW2d 851 (2005). This Court must resolve any conflict in the evidence in the nonmoving party's favor. See *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 303 Mich App 441, 446; 844 NW2d 727 (2013), aff'd 497 Mich 337 (2015). If reasonable jurors could honestly have reached different conclusions, this Court may not substitute its judgment for that of the jury. *Moore v Detroit Entertainment, LLC*, 279 Mich App 195, 202; 755 NW2d 686 (2008). It is for the fact-finder alone to determine the weight and credibility of the evidence. See *King v Reed*, 278 Mich App 504, 522; 751 NW2d 525 (2008).

The proper interpretation of a contract is a question of law subject to review de novo. *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 408; 646 NW2d 170 (2002). This includes the determination whether the contractual language is ambiguous, *Casey v Auto Owners Ins Co*,

273 Mich App 388, 394; 729 NW2d 277 (2006), but the determination of the meaning of an ambiguous contract, including through the consideration of extrinsic evidence, is a question of fact unless the issue can be resolved according to the contractual terms alone, *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 469-470; 663 NW2d 447 (2003); *Farmers Ins Exch v Kurzmann*, 257 Mich App 412, 418; 668 NW2d 199 (2003). A trial court's findings of fact are reviewed for clear error. *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 470; 719 NW2d 19 (2006). "Clear error exists only when the appellate court is left with the definite and firm conviction that a mistake has been made." *Id*. at 471 (quotation marks and citation omitted).

We review de novo whether the trial court properly interpreted relevant statutes, *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016), and court rules, *Staff v Johnson*, 242 Mich App 521, 527; 619 NW2d 57 (2000). The purpose of statutory interpretation "is to ascertain the legislative intent that may be reasonably inferred from the words of the statute." *Mich Ass'n of Home Builders v City of Troy,* 504 Mich 204, 212; 934 NW2d 713 (2019) (quotation marks and citations omitted). "Statutory provisions must be read in the context of the entire act, giving every word its plain and ordinary meaning." *Driver v Naini*, 490 Mich 239, 247; 802 NW2d 311 (2011). When statutory language is clear and unambiguous, the reviewing court must assume that the Legislature intended its plain meaning, and enforce the statute accordingly. *Rouch World, LLC v Dep't of Civil Rights*, 510 Mich 398, 410; 987 NW2d 501 (2022).

Whether to grant declaratory relief is within the trial court's sound discretion. *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 126; 715 NW2d 398 (2006). A trial court abuses its discretion when it selects an outcome falling outside the range of reasonable and principled outcomes. *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). Although a trial court has considerable discretion in selecting an outcome appropriate to the circumstances, it necessarily abuses its discretion when it selects an outcome on the basis of an erroneous application of law. *Id*. This includes when it fails to exercise its discretion when properly asked to do so. See *Rieth v Keeler*, 230 Mich App 346, 348; 583 NW2d 552 (1998). However, the abdication-of-discretion rule applies only when a trial court has an affirmative obligation to exercise its discretion; it does not apply merely because one of the parties has made a request of the court and the court declined to act on it. See *Kemerko Clawson, LLC v RXIV Inc*, 269 Mich App 347, 353; 711 NW2d 801 (2005).

## III. SPLIT MONTHLY PAYMENTS

The trial court's grant of directed verdict in favor of defendant on the grounds that the arrangement resulted from an oral modification of the parties' agreement, in violation of the statute of frauds, was error where the parties intended the split-payment arrangement to be part of the payment terms at the formation of the sale agreement, and that written agreement comported with the statute of frauds by memorializing all of its essential components.

"A party is entitled to a directed verdict if the evidence, when viewed in the light most favorable to the nonmoving party, fails to establish a claim as a matter of law." *Aroma Wines & Equip, Inc v Colombian Distribution Servs, Inc*, 497 Mich 337, 345; 871 NW2d 136 (2015). See also MCR 2.516. In this case, the parties disagree whether the trial court granted defendant a directed verdict on the basis that plaintiff made payments pursuant to a monthly payment arrangement not put in writing. Plaintiff contends that the court stated that this was one of its

reasons, and defendant argues that, although the trial court expressed concern that the payment arrangement was not put in writing, the court stated that the parties' failure to do this was irrelevant to its judgment.

What the trial court actually stated was, "What they chose to do because of what they verbally agreed to do . . . isn't the issue here." This statement indicates that the trial court found that the oral agreement regarding remitting part of the payments to the mortgage company and not directly to defendant was not a valid term of the agreement for purchase of the land, not that the court found that the payment arrangement not being in writing was irrelevant to its decision. As noted, when ruling on defendant's motion, the trial court stated that "the court is going to grant that in the sense that the contract in this matter being a land contract was, number one, not adhered to the way it was written." The trial court thus specifically stated that plaintiff having remitted $1,000 of the monthly payment to the mortgage company was at variance with the agreement, and that this this perceived deviation was part of the reason the trial court granted a directed verdict in favor of defendant.

The primary goal in the interpretation of a contract is to honor the intent of the parties. *Klapp*, 468 Mich at 473. A contract must be construed to give effect to every word, clause, and phrase, and a construction that renders any part of the contract surplusage or nugatory should be avoided. *Id*. at 467-468. Words are to be given their ordinary and plain meanings, *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 367; 817 NW2d 504 (2012), unless defined in the contract, *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 534; 676 NW2d 616 (2004). Contractual terms must be construed in context, *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 516; 773 NW2d 758 (2009), and interpreted to avoid absurd or unreasonable conditions or results, *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 297; 778 NW2d 275 (2009). "If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous." *Meagher v Wayne State Univ*, 222 Mich App 700, 722; 565 NW2d 401 (1997).[1] A clear and unambiguous contract that does not contravene public policy will be enforced as written. *Farmers Ins Exch*, 257 Mich App at 418.

A land contract is an agreement "for the sale of an interest in real estate in which the purchase price is to be paid in installments (other than an earnest money deposit and a lump-sum payment at closing) and no promissory note or mortgage is involved between the seller and the buyer." *Zurcher v Herveat*, 238 Mich App 267, 291; 605 NW2d 329 (1999) (quotation marks and citation omitted). A land contract is an "executory contract in which legal title remains in the seller/vendor until the buyer/vendee performs all the obligations of the contract while equitable title passes to the buyer/vendee upon proper execution of the contract." *Id*.

---

[1] This Court "must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court." MCR 7.215(J)(1). Thus, this Court is not "*strictly required* to follow uncontradicted opinions from this Court decided before November 1, 1990, but . . . they are nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

-6-

MCL 565.361 states as follows:

> (1) When the vendee named in a land contract, or his or her heirs, successors, or assigns, has fully paid and performed the obligations under the contract that are a precondition to the sale and conveyance of the land, the vendor named in the contract shall make conveyance of the land to the vendee by a deed of conveyance as specified in the land contract, or, if the form of the deed is not specified in the land contract, by an appropriate deed. Until the vendor named in the contract has ceased in law to be bound by the provisions of the contract, the obligation to convey the land remains a continuing executory obligation on the part of the vendor.
>
> (2) The vendor named in the land contract who has assigned his or her interest in the contract or sold or mortgaged the land subject to the contract, whether absolutely or as collateral security, shall remain fully obligated to deliver a deed of conveyance as provided in subsection (1). However, if the assignee assumed the conveyancing obligation of the vendor, the original vendor is only secondarily liable for that obligation.

A land contract is valid when it is "definite as to parties, property, consideration, terms and time of performance." *Rathbun v Herche*, 323 Mich 160, 165; 35 NW2d 230 (1948) (quotation marks and citation omitted). See also *Zurcher*, 238 Mich App at 290-291. The elements of a land contract are the term, the schedule of installment payments, and the interest rate. *Id*. at 291.

MCL 566.108 states, in relevant part:

> Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing[.]

However, contracting parties are free to mutually waive or modify their contracts. *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 364; 666 NW2d 251 (2003). "A meeting of the minds," or mutuality "is required not only to make a contract but, also, to rescind or modify it after it has been made." *Universal Leaseway Sys, Inc v Herrud & Co*, 366 Mich 473, 478; 115 NW2d 294 (1962). "This mutuality requirement is satisfied where a waiver or modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to modify or waive the particular original contract." *Quality Prod & Concepts Co*, 469 Mich at 364-365.

*Giannetti v Cornillie*, 447 Mich 998; 525 NW2d 459 (1994) (*Giannetti II*), concerned a modification of a real-estate transaction. The plaintiffs offered $155,000 for a house owned by the estate of the mother of the defendants, with 80% of that amount, or $124,000, to be secured by a mortgage. *Giannetti v Cornillie*, 204 Mich App 234, 236, 238; 514 NW2d 221 (1994), rev'd by 447 Mich 998 (1994) (*Giannetti I*). The defendants made a counteroffer of $160,000 and left the

mortgage amount unchanged in the written offer. *Id.* at 236. The plaintiffs then signed the counteroffer but changed the amount of the price to be mortgaged to $128,000 (80% of the new purchase price). *Id*. The plaintiffs argued that the modification of the mortgage did not invalidate their acceptance "because the mortgage amount, unlike the purchase price, was not a material term of the contract." *Id*. at 237. The majority of this Court's panel disagreed, holding the modification was material and therefore that the plaintiffs' purported acceptance was only a counteroffer. *Id*. at 238. However, In *Giannetti II*, 447 Mich at 998, our Supreme Court reversed for the reasons stated in Judge TAYLOR's dissent. This reasoning included the following:

> The issue presented is whether a change in the manner in which consideration was to be paid constituted a material change in contract terms such that no meeting of the minds occurred, i.e., no contract was formed. This question may be answered by discerning what the parties intended, yet the majority treats the materiality question as if it were a question of law rather than a question of fact. I would find that the trial court properly ascertained whether defendants thought the change in the mortgage amount was material by looking to defendants' conduct after seeing the change. [*Giannetti I*, 204 Mich App at 240 (TAYLOR, J., dissenting) (citations omitted).]

The trial court's factual findings included that the defendants had signed the petition for confirmation of the sale, and that among the defendants was an independent businessman "of at least average business mentality." *Id*. at 240-241. The trial court concluded such an individual would not sign such a document without reviewing it, and that "the defendants' actions evidence[d] their belief as to a meeting of the minds *Id*. at 241. Judge TAYLOR opined that these findings "represent[ed] a fair interpretation of the evidence presented at trial." *Id*.

In this case, as recited earlier in this opinion, the contract documents specified the parties, property, consideration, and terms and time for performance, thereby meeting the requirements of a valid land contract, see *Rathbun*, 323 Mich at 165, including specifying an interest rate of zero, *Zurcher*, 238 Mich App at 291. The statute of frauds requires a contract for the sale of lands, "or some note or memorandum thereof," be in writing and signed by the seller. MCL 566.108. Again, the documents set forth the elements for a valid land contract, and are signed by defendant, in accord with the statute of frauds. See *Rathbun*, 323 Mich at 165.

The remaining question is whether splitting the monthly payment between defendant and the mortgage company violated the agreement. Directions to split monthly payments between the two are not included in the contract documents, but those documents include no instructions concerning where or how to send the monthly payments at all. Considering this, and remembering the primary goal in the interpretation of a contract is to honor the intent of the parties, *Klapp*, 468 Mich at 473, we must consider the intent of the parties regarding where the monthly payments were to be sent upon entering into the agreement. Both parties testified that the split-payment arrangement was at defendant's request, and plaintiff's testimony that defendant first requested this while plaintiff and his wife were renting, and that the parties agreed to maintain that arrangement after the sale agreement was executed, was not disputed. Because contractual terms must be construed in context, *Vushaj*, 284 Mich App at 516, the intent of these parties must be ascertained with that backdrop in mind.

Thus, a reasonable juror could find the sale agreement included the nonessential oral term of the payment split, and therefore it was error for the trial court to grant a directed verdict in favor of defendant on the ground that this payment methodology was at variance with the agreement. See *Moore*, 279 Mich App at 202. The payment arrangement put into practice was not a modification, but rather an original, though unwritten, term of the agreement. The parties agreed that defendant requested this arrangement in the first instance, and its continuance after the sale agreement established the existence of a meeting of the minds concerning this particular arrangement. See *Universal Leaseway Sys, Inc*, 366 Mich at 478.

## IV. GOOD FAITH AND ANTICIPATORY REPUDIATION

Aside from the split monthly payments, the reason the trial court granted a directed verdict in favor of defendant was that plaintiff's complaint was "premature because the plaintiffs [sic] haven't actually tendered a check for what they believed was the payoff balance . . . ." On the basis of this perceived prematurity, the trial court deemed the action for specific performance unripe. The seller in a land contract is not obligated to convey the deed until the buyer "has fully paid and performed the obligations under the contract that are a precondition to the sale and conveyance of the land." MCL 565.361(1). Plaintiff admits he did not pay the full amount he believed he owed, and thus did not satisfy that unambiguous condition to activate defendant's obligation to convey the deed. Plaintiff nonetheless contends that his claims for declaratory judgment and specific performance were valid because defendant both violated his duty of good faith and fair dealing and anticipatorily repudiated the agreement.

To prove breach of contract, a party must establish that "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). However, "[t]he rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994) (quotation marks and citations omitted). However, this rule of first breach applies only when the initial breach is substantial. *Id*.

A breach is substantial if it "effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party" *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 574; 127 NW2d 340 (1964) (citations omitted). This Court has also looked to factors used to define a "material" breach in determining if a first breach is substantial. See *Able Demolition, Inc v Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007). "In determining whether a breach is material, the court should consider whether the nonbreaching party obtained the benefit it reasonably expected to receive." *Omnicom of Mich v Giannetti Investment Co*, 221 Mich App 341, 348; 561 NW2d 138 (1997).

> Other considerations include the extent to which the injured party may be adequately compensated for damages for lack of complete performance, the extent to which the breaching party has partly performed, the comparative hardship on the breaching party in terminating the contract, the willfulness of the breaching party's

conduct, and the greater or lesser uncertainty that the party failing to perform will perform the remainder of the contract. [*Id*.]

Plaintiff argues that, by violating the covenant of good faith and fair dealing, defendant committed the first breach, in response to which he sought declaratory judgment and specific performance. To maintain his claim of breach of the covenant, plaintiff must establish that his failure to make the final payment was not the first breach. Plaintiff's position is that the operative breach was defendant's violation of the covenant of good faith and fair dealing, which occurred before the end of the term, not defendant's failure to convey the deed, which defendant was obligated to do only after receiving full payment.

The implied covenant of good faith and fair dealing is the understanding that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Hammond v United of Oakland, Inc*, 193 Mich App 146, 151-152; 483 NW2d 652 (1992) (quotation marks and citation omitted). The nonoccurrence of a contractual condition may be excused by a breach of the duty of good faith and fair dealing. *Mehling v Evening News Ass'n*, 374 Mich 349, 352; 132 NW2d 25 (1965). Additionally, if an obligor under a contract subject to a condition takes steps to prevent the condition's occurrence, satisfaction of the condition will be discharged or excused, and the conditional promise will become absolute. *Hayes v Beyer*, 284 Mich 60, 64-65; 278 NW 764 (1938). The remedy of specific performance is generally available for breach of a contract for a conveyance of land. See *In re Smith Trust*, 480 Mich 19, 26-27; 745 NW2d 754 (2008).

Plaintiff cites two opinions of our Supreme Court to illustrate these principles. In *Mehling*, 374 Mich at 351, the plaintiff argued that a provision of an appraisal of real property was not applicable because the parties failed to agree on the appraisers' compensation before the appraisers performed their valuation. The Supreme Court ruled in favor of the defendant, reasoning that the plaintiff's refusal to meet for that purpose rendered the condition inoperative:

> "Where a contract is performable on the occurrence of a future event, there is an implied agreement that the promisor will place no obstacle in the way of the happening of such event, particularly where it is dependent in whole or in part on his own act; and where he prevents the fulfillment of a condition precedent or its performance by the adverse party, he cannot rely on such condition to defeat his liability. Hence, the performance of a condition precedent is discharged or excused, and the conditional promise made an absolute one, where the promisor himself waives the performance." [*Id*. at 352, quoting *Hayes*, 284 Mich at 64-65.]

In *Hayes*, the defendant originally owed the plaintiff a real-estate commission, but repurchased the land to avoid paying it. *Hayes*, 284 Mich at 62-63. The Supreme Court agreed that the defendant's actions were deliberate, and held that the nonoccurrence of the condition precedent was thus waived and that the plaintiff's right to performance under the contact had accrued. *Id*. at 64-66.

Plaintiff alleges that, on the basis of defendant's actions, he believed that defendant would not accept a payment that plaintiff offered as the appropriate final payment for the subject property.

This is because defendant would not provide a final amount owed for plaintiff to tender payment for, and because defendant said he would not have accepted payment anyway. Although plaintiff could have, for instance, mailed defendant a check for the amount plaintiff thought was owed, defendant having refused to provide a proper amount in the first instance prevented plaintiff from fulfilling his obligation to pay the lump sum in exchange for the deed. Defendant disagreed with plaintiff as to the final amount owed, so had plaintiff tendered payment, defendant asserted that he would not have accepted it. Therefore, defendant's actions constitute a violation of the covenant of good faith and fair dealing because his actions "destroyed or injured" plaintiff's right to the fruits of the contract, i.e., the deed for the property. *Hammond*, 193 Mich App at 151-152.

Moreover, under the doctrine of anticipatory repudiation, "if, before the time of performance, a party to a contract unequivocally declares the intent not to perform, the innocent party has the option to either sue immediately for the breach of contract or wait until the time of performance." *Stoddard v Mfr Nat'l Bank of Grand Rapids*, 234 Mich App 140, 163; 593 NW2d 630 (1999). "In determining whether an anticipatory breach has occurred, it is the party's intention manifested by acts and words that is controlling, and not any secret intention that may be held." *Paul v Bogle*, 193 Mich App 479, 493; 484 NW2d 728 (1992).

In the context of real-estate contracts, our Supreme Court has held that when a seller of land anticipatorily repudiates, a buyer need not perform an obligation to tender the purchase price to preserve the right to specific performance. *Hanesworth v Hendrickson*, 320 Mich 577, 579-580; 31 NW2d 726 (1948). This principle is of great importance here, because it establishes that plaintiff need not have paid the balance he believed was due by the end of the contract term to have a claim against defendant, as long as defendant did "unequivocally declare[] the intent not to perform." *Stoddard*, 234 Mich App at 163. As noted, defendant testified he would not have accepted a check from plaintiff for the amount plaintiff believed he owed at the end of the contract term, and plaintiff and his wife testified that, at around that time they told defendant they wanted to pay off the balance, defendant responded by attempting to renegotiate the agreement. Plaintiff and his wife also testified that these actions, defendant's failure to provide an amount that he thought was the balance owed and his refusal to cooperate with arranging a closing or to produce a deed, aroused the concern that defendant would not use any lump-sum payment to pay off the mortgage, and had no intention of conveying the deed to them. This evidence is sufficient to establish defendant's intent not to perform, and constitutes a repudiation that would excuse plaintiff's nonperformance. See *Hanesworth*, 320 Mich at 579-580. For these reasons, the trial court erred when it granted a directed verdict to defendant on the specific-performance claim because defendant repudiated the agreement and violated the covenant of good faith and fair dealing.

Lastly, the trial court erred in dismissing plaintiff's claim for declaratory judgment on the basis of ripeness. MCR 2.605(A) states:

(1) In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

(2) For the purpose of this rule, an action is considered within the jurisdiction of a court if the court would have jurisdiction of an action on the same claim or claims in which the plaintiff sought relief other than a declaratory judgment.

A court lacks jurisdiction to issue a declaratory judgment when there is no actual controversy. *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 56; 620 NW2d 546 (2000). Indeed, "the existence of an 'actual controversy' is a condition precedent to the invocation of declaratory relief." *PT Today, Inc*, 270 Mich App at 127. The declaratory-judgment rule incorporates traditional restrictions on justiciability such as standing, ripeness, and mootness. *Pontiac Police & Fire Prefunded Group Health and Ins Trust Bd of Trustees v Pontiac No 2*, 309 Mich App 611, 624; 878 NW2d 783 (2015).

An actual controversy exists when a declaratory judgment is necessary to guide the plaintiff's future conduct to preserve the plaintiff's legal rights. *Shavers v Attorney General*, 402 Mich 554, 588; 267 NW2d 72 (1978). This requirement prevents a trial court from deciding hypothetical issues. *Id*. at 589. "It is not necessary that 'actual injuries or losses have occurred'; rather 'that plaintiffs plead and prove facts which indicate an adverse interest necessitating a sharpening of the issues raised.'" *Kircher v Ypsilanti*, 269 Mich App 224, 227; 712 NW2d 738 (2005), quoting *Shavers*, 402 Mich at 589.

In this case, the trial court was incorrect in its determination that plaintiff's claims for breach of contract and specific performance were unripe because of plaintiff's failure to pay the balance of the purchase price. Ripeness requires that a party "has sustained an actual injury to bring a claim," and has not based the action "on a hypothetical controversy." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 554; 904 NW2d 192 (2017). Plaintiff's claims for specific performance were grounded in legal theories concerning defendant's actions before plaintiff's failure to pay the balance at the end of the term: defendant's breach of the covenant of good faith and fair dealing and anticipatory repudiation. Standing concerns the timing of the action, *id*. at 553, and neither of these theories required plaintiff's performance. These were not hypothetical issues, and plaintiff asserted that declaratory judgment concerning what balance plaintiff owed on the contract was necessary to preserve his rights and guide his conduct. As noted, plaintiff's wife testified that defendant requested that she and plaintiff pay off defendant's mortgage and said they would "worry about the deed later." Thus, the trial court's dismissal of plaintiff's request for declaratory relief on the basis of a lack of ripeness was an error of law, and therefore an abdication of discretion.

## V. IMPOSSIBILITY

Because impossibility is a defense to contractual liability, plaintiff's argument that defendant unilaterally imposed impossibility on plaintiff's performance is misplaced. This Court described the doctrine of impossibility as follows:

A promisor's liability may be extinguished in the event his or her contractual promise becomes objectively impossible to perform. There are two kinds of impossibility: original and supervening; supervening impossibility

develops after the contract in question is formed. Although absolute impossibility is not required, there must be a showing of impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved. The question whether a promisor's liability is extinguished in the event his contractual promise becomes objectively impossible to perform may depend upon whether the supervening event producing impossibility was or was not reasonably foreseeable when he entered into the contract. Risk of nonperformance of a contract should not fairly be thrown upon the promisor, if an unanticipated circumstance had made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract. [*Roberts v Farmers Ins Exch*, 275 Mich App 58, 73-74; 737 NW2d 332 (2007) (quotation marks, citations, and emphasis omitted).]

Generally, "[s]ubsequent events which in the nature of things do not render performance impossible, but only render it more difficult, burdensome, or expensive, will not operate to relieve the contractor." *Chase v Clinton Co*, 241 Mich 478, 484; 217 NW 565 (1928).

In this case, plaintiff is attempting to use this theory to relieve himself of his obligation to make the final lump-sum payment on the ground that defendant made it impossible for him to do so. However, defendant is not bringing an action for performance against plaintiff, so there is no liability for plaintiff to avoid, which is the mechanism behind the theory of impossibility. *Roberts*, 275 Mich App at 73-74. What plaintiff is really asserting is a violation of the covenant of good faith and fair dealing, as addressed earlier in this opinion. Thus, we need not address the impossibility doctrine further.

VI. CONCLUSION

The parties intended that their split-payment arrangement operate as part of their sale agreement from its formation, and that agreement complied with the statute of frauds by memorializing all essential components of the agreement in writing. The trial court's grant of a directed verdict in favor of defendant on the ground that the split-payment arrangement resulted from an oral modification of the parties' agreement, in violation of the statute of frauds, was improper. Moreover, defendant's failure to provide the proper amount owed and his assertion that he would not accept a final payment constituted a breach of the covenant of good faith and fair dealing as well as anticipatory repudiation of the agreement. Thus, the trial court's grant of a directed verdict dismissing plaintiff's claim of breach of contract and specific performance was improper, as was its dismissal of plaintiff's request for declaratory relief on ripeness grounds.

The trial court's order granting defendant a directed verdict is vacated as this Court's decision deems defendant's defenses to plaintiff's complaint to be without merit. This matter is remanded to the trial court for entry of a judgment granting plaintiff specific performance of the

land contract upon payment by plaintiff to defendant of the proper, final amount due, as determined by the trial court on remand.  We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Kathleen Jansen
/s/ Noah P. Hood